# CORN PRODUCTS REFINING COMPANY *v.* EDDY ET AL.

## ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 119. Argued January 14, 1919.—Decided April 14, 1919.

A state regulation respecting the labeling of syrup compounds, which does not discriminate against the manufacturer or his product or against syrups as a class, *held*, not objectionable under the equal protection clause. P. 431.

The right of a manufacturer to maintain secrecy as to his compounds and processes is subject to the right of the State, in the exercise of its police power, to require that the nature of the product be fairly set forth. P. 432. *Held:* That a state regulation, requiring manufacturers of proprietary compound syrups to state definitely in conspicuous letters on the principal label the percentage of each ingredient, is consistent with the due process clause of the Fourteenth Amendment. *Id.*

It is the effect of a regulation as put in force by the State that determines whether it directly burdens interstate commerce, and not its characterization, or its construction by the state court. *Id.*

The proviso in § 8 of the Federal Pure Food Act, that nothing in the act shall be construed as requiring proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredient

to disclose their trade formulas, except in so far as the provisions of the act may require to secure freedom from adulteration or misbranding, merely relates to the interpretation of the requirements of that act, and does not enlarge its purview or establish a rule as to matters which lie outside its prohibitions. P. 439.

A regulation adopted by a state board of health, and in effect upheld by the state court as authorized by the state pure food law, must be regarded as state legislation in ascertaining its relation to the federal food law. P. 437.

Neither under the commerce clause directly nor through the Federal Pure Food Law, as amended, is a State forbidden to require that proprietary foods, imported into the State and sold in the original packages, shall bear labels stating the names and percentages of the ingredients composing them. P. 433. *Savage* v. *Jones*, 225 U. S. 501, followed; *McDermott* v. *Wisconsin*, 228 U. S. 115, distinguished.

99 Kansas, 63, affirmed.

THE case is stated in the opinion.

*Mr. T. M. Lillard,* with whom *Mr. R. W. Blair* and *Mr. C. A. Magaw* were on the brief, for plaintiff in error.

*Mr. J. L. Hunt,* Assistant Attorney General of the State of Kansas, with whom *Mr. S. M. Brewster,* Attorney General of the State of Kansas, and *Mr. S. N. Hawkes,* Assistant Attorney General of the State of Kansas, were on the brief, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Plaintiff in error (plaintiff in the original action) is a corporation which manufactures in the State of Illinois a proprietary table syrup composed of 85 per cent. corn syrup or glucose, 10 per cent. molasses, and 5 per cent. sorghum, and sells it under the name of "Mary Jane" in cans labeled as follows:

"5 Pounds Net Weight.
Mary Jane.
Reg. U. S. Pat. Off.

Mary Jane is guaranteed by Corn Products Refining Co. to comply with the Food and Drugs Act, June 30, 1906. Registered under serial number 2317.

Mary Jane. A Table Syrup Prepared from Corn Syrup, Molasses and Pure Country Sorghum. Contains Sulphur Dioxide.

M'f'd by Corn Products Refining Co.
General Offices—New York, U. S. A."

Prior to the beginning of the action plaintiff had agents and representatives employed in soliciting orders for this syrup from wholesale merchants in the State of Kansas, the orders being filled by shipping the required quantity of the syrup in interstate commerce in the original sealed cans with original labels attached. Defendants, who are the members of the State Board of Health of Kansas, deeming "Mary Jane" to be misbranded in several particulars within the meaning of the Food and Drugs Law of that State (c. 266, Kans. Sess. Laws, 1907, as amended by c. 184, Laws 1909; embodied in c. 35, Kans. Gen. Stats. 1909; c. 32, Kans. Gen. Stats. 1915), and regulations adopted by the Board under authority of that law, notified plaintiff's agents and representatives and other persons selling and dealing in "Mary Jane" syrup that unless plaintiff complied with Regulation 6 of the State Board by attaching in a conspicuous place on the outside of each can sold or offered for sale within the State a label with the word "compound" printed upon it, and stating definitely the percentage of each ingredient of which the syrup was composed, they would be arrested and prosecuted. Similar warnings were communicated to wholesale and retail dealers who were and long had been selling this syrup in Kansas under the original brand and label.

Plaintiff brought an equitable action against the members of the board of health in one of the district courts of the State; setting up the pertinent facts, alleging that defendants were acting under the authority of the state

law and certain regulations adopted by them pursuant
to it, and among others Regulation 6, requiring that in
the case of syrups the principal label should state definitely
the percentage of each ingredient, in the case of compounds,
mixtures, imitations, or blends; plaintiff further averring
that the state law and the regulations referred to, par-
ticularly Regulation 6, were void because in conflict with
the interstate commerce clause (Art. I, § 8) of the Consti-
tution of the United States and the Act of Congress of
June 30, 1906, c. 3915, 34 Stat. 768, and also in conflict
with the provisions of § 1 of the Fourteenth Amendment;
and that defendants were interfering with plaintiff's inter-
state commerce and with its lawful business in the State
of Kansas, thereby threatening plaintiff with great and
irreparable damage; and praying for an injunction.

Their general demurrer having been overruled, defend-
ants answered and the case came on for hearing, with the
result that the district court made a finding "that all of
the allegations of plaintiff's petition are true"; and ad-
judged that there should be a perpetual injunction restrain-
ing defendants from interfering with the sale of "Mary
Jane" in the State of Kansas upon the ground that it
was misbranded when sold under the label above referred
to, and in particular from interfering, because of Regula-
tion 6, with persons dealing in or selling the syrup, so
branded, within the State.

Upon appeal, the Supreme Court of Kansas reversed
the judgment with direction that the district court enter
judgment for the defendants (99 Kansas, 63); and the
case comes here on writ of error under § 237, Judicial Code,
as amended September 6, 1916, c. 448, 39 Stat. 726, upon
the contention that the Kansas statute and the regulations
adopted by the state board pursuant to it, as interpreted
and applied by the state court of last resort, are repug-
nant to the interstate commerce clause of the Constitution
of the United States (Art. I, § 8) and to the due process

and equal protection provisions of the Fourteenth Amendment, and especially are in conflict with the Federal Food and Drugs Act.

Upon the argument here, the attack was centered upon the effect of Regulation 6, which, so far as pertinent, reads as follows: "Manufacturers of proprietary foods are required to state upon the label the names and percentages of the materials used, so far as is necessary to secure freedom from adulteration and misbranding: (1) In the case of syrups, the principal label shall state definitely, in conspicuous letters, the percentage of each ingredient, in the case of compounds, mixtures, imitations, or blends. When the name of the syrup includes the name of one or more of the ingredients, the preponderating ingredient shall be named first."

It will be convenient to deal first with the contention made under the Fourteenth Amendment. It is not seriously insisted that there is a denial of the equal protection of the laws, and we see no ground for such a contention. There is no discrimination against plaintiff in error or its product, or against syrups as a class.

It is, however, urged that since plaintiff's syrup is a proprietary food, made under a secret formula and sold under its own distinctive name, and since it contains no deleterious or injurious ingredients, the effect of the reglation in requiring plaintiff to disclose upon the label the ingredients and their proportions amounts to a taking of its property without due process of law. Evidently the purpose of the requirement is to secure freedom from adulteration and misbranding; the mischief of misbranding being that purchasers may be misled with respect to the wholesomeness or food value of the compound. And it is too plain for argument that a manufacturer or vendor has no constitutional right to sell goods without giving to the purchaser fair information of what it is that is being sold. The right of a manufacturer to maintain

secrecy as to his compounds and processes must be held subject to the right of the State, in the exercise of its police power and in promotion of fair dealing, to require that the nature of the product be fairly set forth. *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338, 353; *Savage* v. *Jones,* 225 U. S. 501, 524; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 548–549; *Schmidinger* v. *Chicago,* 226 U. S. 578, 588; *Armour & Co.* v. *North Dakota,* 240 U. S. 510, 514, 515; *Hutchinson Ice Cream Co.* v. Iowa, 242 U. S. 153, 159; *Hebe Co.* v. *Shaw,* 248 U. S. 297, 303.

We turn to the questions raised under the commerce clause and the act of Congress.

Although the Supreme Court in its opinion said nothing about interstate commerce, it cannot be doubted, in the state of the record, that defendants' activities against which relief was sought included incidental interference with plaintiff's interstate commerce in the "Mary Jane" syrup; and that the general judgment in favor of defendants amounts to an adjudication that the state law and regulations are to be enforced with respect to plaintiff's product indiscriminately, not only when sold and offered for sale in domestic commerce but also while in the hands of the importing dealers for sale in the original packages and hence, in contemplation of law, still in the course of commerce from State to State. The silence of the Supreme Court upon the subject cannot change the result in this regard. In cases of this kind, we are concerned not with the characterization or construction of the state law by the state court, nor even with the question whether it has in terms been construed, but solely with the effect and operation of the law as put in force by the State. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 362; *Kansas City &c. Ry. Co.* v. *Kansas,* 240 U. S. 227, 231; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 237; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 294.

The question of repugnancy to the commerce clause may be treated (a) aside from federal legislation; and (b) in view of the "Food and Drugs Act" of Congress, June 30, 1906, c. 3915, 34 Stat. 768.

Upon this question, in both aspects, the judgment under review is clearly sustained by the decision of this court in *Savage* v. *Jones*, 225 U. S. 501, which is precisely in point. That case raised a question whether a statute of Indiana relating to concentrated commercial feeding stuffs for animals (Acts 1907, c. 206), which required the packages, when sold or offered for sale, to bear in a conspicuous place a tag or label having plainly printed on it in the English language (among other things) a guaranteed analysis stating the minimum of crude fat and crude protein, determined by a prescribed method, and the ingredients from which the concentrated commercial feeding stuff was compounded, as applied to sales of complainant's products in original packages by importing purchasers, constituted an unwarranted interference with interstate commerce, either independently of or in the light of the Food and Drugs Act of Congress. The court finding (p. 524) that the evident purpose of the Indiana statute was to prevent fraud and imposition in the sale of food for domestic animals; that its requirements were directed to that end and were not unreasonable; and that it was not aimed at interstate commerce, but without discrimination sought to promote fair dealing in the described articles of food; held (p. 528) that the statute was a lawful exercise of the police power of the State, including the required disclosure of the ingredients contained in feeding stuffs offered for sale in that State and the provision for their inspection and analysis. Upon the question whether there was any conflict with the act of Congress, after pointing out (p. 529) that the object of the latter act was to prevent adulteration and misbranding by prohibiting the introduction into any State from another

State of articles of food or drugs adulterated or misbranded within the meaning of the act, and that included in the definition of the term "food", were "all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound"; and (p. 531) that in the enumeration of the acts constituting a violation of the statute Congress had not included (as the Indiana statute did include) a failure to disclose the ingredients of the article, save in specific instances where morphine, opium, cocaine, or other substances particularly mentioned were present; and after reciting the provision of the federal act that an article "for the purposes of this Act" shall be deemed misbranded if the package or label bear any statement, design or device regarding it or the ingredients or substances it contains, which shall be false or misleading; the court proceeded to say (p. 532): "But this does not cover the entire ground. It is one thing to make a false or misleading statement regarding the article or its ingredients, and it may be quite another to give no information as to what the ingredients are. As is well known, products may be sold, and in case of so-called proprietary articles frequently are sold, under trade names which do not reveal the ingredients of the composition and the proprietors refrain from revealing them. Moreover, in defining what shall be adulteration or misbranding for the purposes of the Federal act, it is provided that mixtures or compounds known as articles of food under their own distinctive names, not taking or imitating the distinctive name of another article, which do not contain 'any added poisonous or deleterious ingredients' shall not be deemed to be adulterated or misbranded if the name be accompanied on the same label or brand with a statement of the place of manufacture (§ 8). Congress has thus limited the scope of its prohibitions. It has not included that at which the Indiana statute aims. Can it be said that Congress, nevertheless,

has denied to the State, with respect to the feeding stuffs coming from another State and sold in the original packages, the power the State otherwise would have to prevent imposition upon the public by making a reasonable and non-discriminatory provision for the disclosure of ingredients, and for inspection and analysis? If there be such denial it is not to be found in any express declaration to that effect. Undoubtedly Congress, by virtue of its paramount authority over interstate commerce, might have said that such goods should be free from the incidental effect of a state law enacted for these purposes. But it did not so declare. There is a proviso in the section defining misbranding for the purposes of the act that 'nothing in this Act shall be construed' as requiring manufacturers of proprietary foods which contain no unwholesome added ingredient to disclose their trade formulas 'except in so far as the provisions of this Act may require to secure freedom from adulteration or misbranding' (§ 8). We have already noted the limitations of the provisions referred to. And it is clear that this proviso merely relates to the interpretation of the requirements of the act, and does not enlarge its purview or establish a rule as to matters which lie outside its prohibitions. Is, then, a denial to the State of the exercise of its power for the purposes in question necessarily implied in the Federal statute? For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power. [Citing cases.] But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation

is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State. This principle has had abundant illustration." And, after citing many previous decisions of this court, and analyzing several of them, the opinion proceeds (p. 539): "Applying these established principles to the present case, no ground appears for denying validity to the statute of Indiana. That State has determined that it is necessary in order to secure proper protection from deception that purchasers of the described feeding stuffs should be suitably informed of what they are buying and has made reasonable provision for disclosure of ingredients by certificate and label, and for inspection and analysis. The requirements, the enforcement of which the bill seeks to enjoin, are not in any way in conflict with the provisions of the Federal act. They may be sustained without impairing in the slightest degree its operation and effect. There is no question here of conflicting standards, or of opposition of state to Federal authority. It follows that the complainant's bill in this aspect of the case was without equity."

An attempt is made to distinguish *Savage* v. *Jones,* upon the ground that the Indiana statute there under consideration covered a field of regulation which had not been included in the federal statute, whereas, it is said, the Kansas Food and Drugs Law is almost literally a reproduction of the federal law upon the same subject. It is true that the Kansas statute, *mutatis mutandis,* follows quite closely the lines of the act of Congress, and that its 8th section, which defines the term "misbranded" is almost a copy of the corresponding section of the federal act; but in the following proviso at the close of the section the words italicized have been inserted by the state legislature, they not appearing in the federal act: "And pro-

vided further, that nothing in this act shall be construed
as requiring or compelling proprietors or manufacturers
of proprietary foods, which contain no unwholesome in-
gredients, to disclose their trade formulas, except in so
far as the provisions of this act, *or the rules and regulations
of the State Board of Health,* may require to secure freedom
from adulteration or misbranding." These italicized·
words make a very substantial difference. Section 3 of
the Kansas act provides that "The State Board of Health
is authorized and directed to make and publish uniform
rules and regulations, not in conflict with the laws of this
state, for carrying out the provisions of this act;" and
under this authority Regulation 6 was adopted and pub-
lished, which requires manufacturers of certain proprietary
foods, including syrups that are compounds, mixtures, or
blends, to state definitely upon the principal label the
percentage of each ingredient. It is insisted that the
regulation goes beyond the authority conferred upon the
state board because it is inconsistent with the definition
of "misbranding" contained in the act, and therefore can-
not be deemed to be a regulation required to secure free-
dom from misbranding. Upon this particular point the
opinion of the Kansas Supreme Court is silent; but the
decision of the district court upon the demurrer sustained
the validity of the regulation as being within the author-
ity of the board; the Supreme Court did not overrule this;
the question is one of state law; and we must assume that
the regulation, having been adopted by the board and in
effect sustained by the decision of the Supreme Court, is
within the authorization of the statute. This being so,
it must be treated as an enactment proceeding from the
legislative power of the State; and hence it stands upon
precisely the same basis as the requirement of the Indiana
statute (quoted in 225 U. S. 504, and referred to above)
that commercial feeding stuffs should bear a label show-
ing among other things a guaranteed analysis stating the

minimum percentage of crude fat and crude protein and the ingredients from which the article was compounded. It was because of the absence from the federal act of a provision requiring the ingredients to be disclosed that this court held that Congress had limited the scope of its prohibitions and had not included that at which the Indiana statute aimed.

The Food and Drugs Act of Congress has not been changed in any material respect from the form it bore when *Savage* v. *Jones* arose. By Acts of August 23, 1912, c. 352, 37 Stat. 416, and March 3, 1913, c. 117, 37 Stat. 732, § 8 has been amended, but not in any manner that affects the present question.

The fact that the Kansas statute *mutatis mutandis* follows quite closely the federal act, and that § 8 defines the term "misbranded" almost in the very words of the corresponding section of the act of Congress, with the significant difference in the final proviso to which we have called attention, is not dispositive of the question whether Congress has covered the field to the exclusion of state regulation. This is to be determined by what the act of Congress omits, not by what it contains; and by considering whether, in words or by necessary implication, Congress has prohibited the States from making any regulation in respect of the omitted matter. Further argument upon the question is foreclosed by the decision in *Savage* v. *Jones* that an omission from the act of Congress of a provision requiring feeding stuffs transported in interstate commerce to give affirmative information as to the ingredients of the article amounted to a limitation by Congress of the scope of its prohibitions, and that, although not including that at which the Indiana statute aimed, Congress had not denied to the State, with respect to feeding stuffs coming from another State and sold in original packages, the power to prevent imposition upon the public by making a reasonable and non-discriminatory

provision for the disclosure of ingredients and for inspection and analysis.

That decision is conclusive also upon this point: that the proviso in § 8 of the federal act that "nothing in this Act shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredient to disclose their trade formulas, except in so far as the provisions of this Act may require to secure freedom from adulteration or misbranding,". merely relates to the interpretation of the requirements of the federal act, and does not enlarge its purview or establish a rule as to matters which lie outside its prohibitions.

*Savage* v. *Jones* was decided after elaborate argument and upon full consideration. We see no reason to reconsider the conclusion there reached or to deny to the case its proper authority. Its doctrine was followed and applied in *Sligh* v. *Kirkwood,* 237 U. S. 52, 61–62; *Hebe Co.* v. *Shaw,* 248 U. S. 297, 304.

It is argued that the present case is controlled rather by *McDermott* v. *Wisconsin,* 228 U. S. 115, 130, and in effect that this case must be taken as overruling *Savage* v. *Jones.* The contention is unfounded. The authority of the earlier decision was expressly recognized in the opinion of the court in the later; the distinction being placed (pp. 131–132) upon the question whether the regulations of the State concerning the same subject-matter were in conflict with the acts of Congress. The Wisconsin statute was held to be in conflict because it required that packages of food stuffs received through the channels of interstate commerce, bearing labels intended to be in compliance with the act of Congress, while the goods were still unsold and were in the possession of the importer for the purpose of sale and being exposed and offered for sale by him, as a condition of their legitimate sale within the State, should bear the label required by the state law and none other—

in effect requiring the label that showed compliance with the act of Congress to be removed from the package before the first sale by the importer, and while the goods remained still subject to federal inspection.

The judgment under review should be

*Affirmed.*