### B. & O. RR. Co v SHOBER

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10733. Decided Nov. 3, 1930

Tolles, Hoggsett & Ginn, Cleveland, for Railroad.

Bersteen & Bernsteen, Cleveland, for Shober.

**CLINE, J.:**

The briefs of both plaintiff and defendant have searched the law with unerring accuracy and with a broad devotion to duty, on the part of counsel. The discussion of the case has been lawyer-like and most helpful to the court and the distinctions in the law so thoroughly investigated and analyzed that much of the labor devolving upon the court has been greatly alleviated.

1. Was the case one cognizable under the Federal Employers Liability Act?

At the threshold of the case we are met with the claim by the defendant that neither the defendant nor the plaintiff were engaged in interstate traffic at the time of the accident which is the basis of this suit.

It undoubtedly is the law that no action can be maintained under the Federal Employers Liability Act unless both parties were engaged in interstate commerce at the time of the occurence which is the basis of the action.

The Federal Employers Act so far as pertinent to the decision of this court is as follows:

"Sec. 51. LIABILITY OF COMMON CARRIERS BY RAILROAD, IN INTERSTATE OR FOREIGN COMMERCE, FOR INJURIES TO EMPLOYEES FROM NEGLIGENCE.

Every common carrier by railroad while engaged in commerce between any of the several states or territories, or between the states or territories or between the District of Columbia and any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in the case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Congress has the power to enact legislation which would cover interstate carriers, whether engaged in interstate or intrastate traffic, but it has only seen fit to adopt such legisaltion which provides a remedy when the parties are engaged in interstate commerce. Congress has not legislated in this respect as to intrastate commerce.

In Illinois Central Railroad Co. vs Behrens, Admr., 233 U. S. 473, the court held:

"When a railroad is a highway for both interstate and intrastate commerce, and the two classes of traffic are interdependent in point of both movement and safety, Congress may, under the power committed to it by the commerce clause of the Constitution, regulate the liability of the carrier for injuries suffered by an employe engaged in general work pertaining to both classes of commerce, whether the particular service performed at the time, isolatedly considered, is in interstate or intrastate commerce."

The plaintiff was engaged, at the time he received his injuries, in stenciling cars which were standing in the railroad yard, which cars were in the future to be used sometimes in interstate traffic and sometimes in intrastate traffic. The difficulty is to determine where interstate traffic begins and ends, and likewise what are the limits of intrastate traffic.

In Industrial Commission vs Davis, 259 U. S. 182, the court held:

"Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the Federal Act."

Although the man who sells the tickets in a local office may in some remote degree be connected with the operation of interstate commerce, yet the courts declare in the consideration of the Federal Employers Act that he is not actually engaged in interstate commerce.

What, then, is the line of demarcation?

A case closely in point is reported in 240 U. S. 439, Pecos & Northern Texas Railway Co. vs Rosenbloom. In this case Rosenbloom was employed by the railway as a ticket clerk and his duties required that he be in and at the switch yard in order to take and preserve a record of numbers on outgoing cars and to seal those that needed it. The evidence showed that the train, consisting of thirty odd cars, with one exception, was engaged in interstate commerce. The deceased who recovered a verdict, was taking the number of these cars and there was direct evidence to the same effect. The judgment was reversed because the court refused the following instructions:

"If M. A. Rosenbloom, at the time of his death, was engaged in examining seals and making records of seals on

cars being transported interstate over the line of defendant and other lines of connecting carriers, and if such work was a necessary part and customary work, reasonably carried on by defendant as a part of its business, transporting freight interstate over its line, or if he had then just completed such inspection of said train and had not yet completed his record, and placed it in the place where usually kept, then you will return a verdict for the defendant on its special plea that plaintiff has no right to maintain this suit in the capacity in which she sues."

In Philadelphia Railway Co. vs Beeman, 295 Federal 658, plaintiff was a member of a switching crew distributing a train of sixteen cars, two, of which contained interstate freight, which train was brought into the yard of the defendant. He was injured, and it was held that in the distribution of the cars the defendant was engaged in interstate commerce.

In St. Louis, San Francisco & Texas Railway Co. vs Seale, 229 U. S. 156, it was held:

"An employe whose duty is to take the numbers of and seal up and label cars, some of which are engaged in interstate and some in intrastate traffic, is directly and not indirectly engaged in interstate commerce.

Interstate transportation is not ended by the arrival of the train at the terminal. The breaking up of the train and moving the cars to the appropriate tracks for making up new trains for further destination or for unloading is as much a part of interstate transportation as the movement across the state line."

In New York Central and Hudson River Railroad Company vs Carr, 238 U. S. 260, the court states that during the same day railroad employes often and rapidly pass from intrastate to interstate employment and the courts are constantly called upon to decide close questions as to the dividing line between the two classes of employment. Each case must be decided in the light of its particular facts. The syllabus reads:

"A brakeman on an intrastate car in a train consisting of both intrastate and interstate cars who is engaged in cutting out the intrastate car so that the train may proceed on its interstate business, is, while so doing, engaged and employed in interstate commerce and may maintain an action under the Employer's Liability Act."

In Baltimore & O. R. R. Co. vs. Flechtner, 300 Fed. Rep. 318, decided by the Circuit Court of Appeals, Sixth Circuit, the court held:

"A brakeman employed in switchyards, and where injured assisting in making up a train consisting of both interstate and intrastate cars, by seeing that all were properly coupled, held employed in "interstate commerce" within the Employers' Liability Act."

A case somewhat analogous is the case of Northern Coal & Dock Co. et al vs Strand et al 276 U. S. 142, where it was determined that the work of a stevedore, while engaged in unloading a vessel at dock, is maritime in character, although it consumes but part of his time under his employment, the remainder being devoted to work ashore.

In that case the stevedore was killed while at work on a vessel at dock unloading cargo for the consignee. The cause of action against the employer for the death, was governed by the Merchant Marine Act, —the stevedore was a 'seaman' within the Act—and the State Compensation Law did not apply. This illustrates the tendency of the court to humanitarian construction of the act.

In Erie Railroad Co. vs Szary, 253 U. S. p. 86, the court held:

"An employee of a railroad engaged in both interstate and intrastate commerce, whose duty it was to dry sand in stoves in a small structure near the tracks and supply it to the locomotives, whether operating in the one kind of commerce or the other, was injured while returning from an ash-pit whither he had gone to dump ashes taken by him from one of the stoves after sanding several locomotives bound to other states. Held, employed in interstate commerce within the meaning of the Federal Employers' Liability Act, p. 89, Erie R. R. Co. vs Collins, Ante, 77, followed."

Some of the leading cases holding certain acts constitute intrastate commerce, are hard to reconcile with the above cases.

In Davis vs Baltimore & Ohio Railroad Co. 10 Fed. Rep. 2nd Series, p. 140 the court held:

"Where cars had been taken from intrastate service and moved as part of interstate train to place of repair, and after being repaired were returned for use either in interstate or intrastate

commerce, plaintiff injured during repairs, was not engaged in 'interstate commerce' and within protection of Federal Employers' Liability Act."

In Illinois Central Railroad Co. vs Rogers, 221 Federal Rep. p. 52, Circuit Court of Appeals, 5th Cir. it was held that an employe of a railraod company, while cleaning stencils used by the company to mark cars owned and used by it in interstate commerce, was not engaged in interstate commerce.

This case shows the line of demarcation between the cases. If the man who cleaned the stencils which were used to mark interstate cars was not engaged in interstate commerce, then may it be said that the employe who used the stencil to actually mark the car was engaged in interstate commerce? It seems to the writer of this opinion that the constant trend of the Supreme Court of the United States in its decisions has been to broaden the scope of the term "interstate commerce" under the Federal Employers' Liability Act. The Act should not be given any narrow construction, because it was intended to promote the safety and welfare of employees' and protect their widows and orphans.

The line dividing interstate from intrastate commerce is very indistinct and lies in a twilight zone. The difference between them passes from one to the other as day passes into night. Having due regard for the decisions of the court in Illinois Central vs Rogers, and having also in mind the decision of the Supreme Court in many kindred and similar cases it does seem that the trend of opinion is and ought to be that the stenciling of the cars to be used in intrastate as well as interstate commerce, constitutes an act performed in interstate commerce.

The negligence of the defendant.—The weight of the evidence. The questions as to whether or not the verdict is against the weight of the evidence, were submitted to the jury and the jury returned a general verdict in favor of plaintiff. The argument of counsel and the presentation of this subject in the birefs shows such a conflict of evidence that the court cannot say that the verdict is against the weight of the evidence. Were the verdict for the defendant in this case the court could not, without violence to the settled law, have disturbed the same. Under our system of jurisprudence, the determination of the ultimate facts is a duty delegated to the juries and the court should not lightly assume the duty of determining the facts contrary to the judgment of the jury unless, according to the well settled rule, it is manifestly against the weight of the evidence.

We have examined all the cases cited by the defendant, especially the question of the duty owing by the defendant and by defendant and plaintiff to each other. The case of Railway vs Allen, 276 U. S. 165, while somewhat similar in facts may especially be distinguished by the inclusion of other facts in the case at bar, not included in the Allen case or by the omission of other facts in one case or the other.

On the whole this court has many times laid down a rule as above stated and which we believe to be salutory and which has the tendency to preserve and which continues to preserve the freedom of and right to jury trial.

Exclusion of testimony. During the progress of the trial there was a sharp conflict as to whether or not Hutchings, the foreman, actually gave any preemptory order to Shober, and whether he had told Shober as claimed by him, "I'll look out for you."

The defendant earnestly maintains that no order was given by Hutchings nor was any such statement made to Shober. The truth or falsity of the alleged statement by Hutchings to Shober, "I'll look out for you" became of great importance. Four associates of Shober were called to the stand by the plaintiff, all of whom testified they saw Shober at the hospital and the defendant propounded the question to each of them as to whether or not Shober stated to the witness while at the hospital or at his home, that Hutchings, the foreman, stated to him, "I will look out for you," or words to that effect.

The plaintiff's objection to the question was sustained and this is assigned as error. It is true that what Shober said to his friends in a hospital concerning any statement of Hutchings would not tend to prove or disprove that fact. It is claimed, however, by the defendant that the statement alluded to Hutchings and was injected into the case more than a year after the accident occurred, for the purpose of avoiding the consequences of negligence or assumption of risk which would have followed in the event no such order or promise had been made by Hutchings to his subordinate.

It is argued that it is not improbable that if Hutchings had advised Shober that he

would look out for him, and his failure to do so was the cause of the accident, that Shober would have mentioned that fact to his friends. It may be that he did mention it, and it may be that he did not, but we believe that defendant was entitled to this evidence as bearing upon the truth or falsity of the plaintiff's claim of the promise of protection from injury by his employer.

5. It is claimed the court erred (a), in refusing to instruct the jury before argument, as requested by defendant; (b) in failing and refusing to instruct the jury after argument as to the assumption of risk, and other questions of law.

There are seven charges of negligence made in the petition and during the progress of the trial the court orally withdrew all of the charges of negligence from the consideration of the jury and the petition was amended by alleging that the foreman had "just prior to said injury expressly undertaken to protect the plaintiff in his work and in passing between said cars but wholly neglected to protect plaintiff by warning signal or otherwise." It is probable, had not the amendment to the petition been made and proof offered under it as to the promise of Hutchings to "look out" for Shober, that the case would have been withdrawn from the jury. There was left for the consideration of the jury the question as to whether or not defendant, through its foreman, did neglect to protect the plaintiff by looking out for him, by warning signal or otherwise, of the movement of the cars.

Defendant requested the court, in a separate written request, to charge the jury before argument that each of the remaining specifications of negligence, except the question of the promise of the foreman to protect his subordinate, be withdrawn from the jury. The court refused so to charge before argument, upon the theory that he had orally directed the jury not to consider these questions or those specifications of negligence and that therefore they were not in the case and the charges before argument did not involve any material question in the case.

The Supreme Court has so often laid down the rule that 11447-7 GC which require the court to charge the jury before argument, upon request of counsel, are mandatory, that we need no more than refer to the latest decision of the Supreme Court on the subject.

**Lime Car Exchange Co. vs Hemperly, 120 Oh St 400.**

Barnston vs Craig, 121 Oh St (Ohio Law Rep. Jan. 13, 1930 p. 237)

Inasmuch as the charges of negligence still remained in the petition which would be sent to the jury room, we think, under the positive rule of law, laid down by the Supreme Court, that the trial court should have charged the jury upon the specifications of negligence which were still in the petition although orally withdrawn from the case. These charges were in writing and under the statute were required to be sent to the jury room. Defendant was entitled to have these instructions with the jury in the jury room, and we do not think that any oral instruction of the court to disregard allegations of negligence met the requirements of the statute. While it may be doubtful whether or not the omission of the court to so charge the jury was prejudicial error which would have substantially affected the rights of defendant, and probably for that ground alone this court would not have reversed the verdict, yet the right of a party to have the statute complied with by the trial judge should not be lightly passed over by any judicial authority.

(b) Defendant also made many other requests for instructions to the jury, most of which contained statements of fact which were to be properly determined by the jury, but we are of the opinion that request No. 10, which in substance instructed the jury that the fact that Shober was injured, was not in and of itself evidence of negligence of the company, even though Hutchings may have said to Shober, "I will look out for you." We think that request No. 10 was proper and should have been given.

Assumption of risk. Defendants' answer contained an averment denying that it was engaged in interstate commerce, denying the negligence charged and by way of separate defense alleged that plaintiff was an experienced employe fully familiar with the work in which he was engaged; the conditions which obtained in the railroad yard and that the plaintiff, as a matter of law, assumed the risk of the accident of which his employment.

There was a sharp conflict as to whether or not the plaintiff was engaged in interstate commerce which has been heretofore discussed in this opinion. If the plaintiff was engaged in interstate commerce, then under the law he assumed certain risks of his employment.

The court in its general charge to the jury wholly neglected to refer to the defense of assumption of risk, and did not define this issue. After the court had instructed the jury, counsel for defendant requested the court to give the following charge on the question of assumption of risk:

"I instruct you that under the Federal Employers' Liability Act, an employe such as Shober assumed the ordinary risks incident to his employment. He also assumes extraordinary risks even though the risk be due to negligence on the part of the company, providing Shober was aware of such risk and appreciated the danger arising therefrom. Hence, if you fail to find by a preponderance of the evidence that Hutchings used the words, "I'll look out for you" I say to you that Shober in going between these cars, assumed the risk of their being moved and your verdict will be for the defendant."

"Furthermore, I instruct you that even though you find that Hutchings used the words, "I'll look out for you" nevertheless if Shober did not rely on said statement but on the contrary went between the cars without giving Hutchings an opportunity to warn him, still Shober who knew of the possibility of the movement of the cars in on No. 5, would assume the risk of this accident and could not be entitled to recover, and your verdict will be in favor of the defendant."

Except as specified in Section 4 of the Federal Employers' Liability Act, the decisions uniformly hold that the employe assumes the ordinary risk of his employment, and when obviously fully known and appreciated the extraordinary risks and those due to the negligence of his employer and fellow employees.

R. R. vs Allen, 276 U. S. 165.

"Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employe must be held, as a matter of law, to understand, appreciate and assume the risk of it. Texas & Pacific Ry Co. vs Becaringan, 196 U. S. 81; Fitzgerald vs Connecticut River Paper Co. 155 Mass. 135. The visible conditions may have been of recent origin and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding and the employe is of full age, intelligence and adequate experience, and all of these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court." Chesapeake & Ohio Ry. Co. vs BeAtley, 241, U. S. 310.

"The act of Congress, by making the carrier liable for an employe's injury resulting in whole or in part from the negligence of any of the officers, agents or employees' of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a co-employee upon the same basis as the negligence of the employer. At the same time, in saving the defense of assumption of risk in cases other than those where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee (Seaboard Air Line vs Horton, 235 U. S. 492-502) the Act placed a co-employee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk."

In the cases within the perview of the Employers' Liability Act, the carrier is no longer exempted by the Act but he is answerable for and may be compelled to respond in damages for the negligence of an employe as well as the negligence of a fellow servant. Section 4 of that Act eliminates the defense of assumption of risk caused by the defect or insufficiency due to the carrier's negligence.

The employe therefore must assume not only the ordinary risks of his employment, but also those risks which when obvious or fully known and appreciated, those due to the negligence of his employer and fellow employees. R. R. Co. vs Allen, 276 U. S. 165.

The defense, assumption of risk, may not, like defense of contributory negligence,

modify the amount of a verdict but is a complete defense which may entirely defeat the right of an employer to recover for injuries sustained in the course of his employment.

We think it was the right of the defendant to have the instructions which the court refused to give and that such refusal was material and of substantial benefit to the defendant.

The next claim which we consider is that the verdict was excessive. The original verdict was $37,500.00 and was reduced by the action of the court to $30,125.00. The verdict for that amount was sustained. Plaintiff was forty-eight years of age, his avreage earnings were between $160.00 to $180.00 a month, or about $2000.00 a year. Plaintiff was not permanently or totally disabled but will be unable to perform work involving climbing or walking, i. e., railroad work. In other words a fair inference from the medical testimony is that plaintiff will not be entirely precluded from having a future income.

The defendant claims that the income from the amount of the verdict, at six percent interest, would yield a return to the plaintiff for the rest of his life in excess of his wages paid him by the railroad company, and therefore there was preserved to the estate of the plaintiff the principal amount of the verdict, namely, $37,500.00, for distribution to his next of kin.

This argument might be convincing were it compensation for loss of money only, but such is not the law. The right to live a full and happy life free from pain and suffering and free from the inconveniences which serious injuries cause to a person, are quite as valuable, if not more valuable than money itself. There is no adequate method by which pain and suffering, inconvenience and incapacity may be measured. The desire and ability to go to work in the morning, by any rightminded person, is a greater joy by far than having untold wealth, accompanied by pain, illness or disease.

In considering the nature of the injuries, his inability to work, crushing of the bones of the pelvis and other injuries outlined in the record, we do not believe that the verdict was excessive.

For the reasons indicated the judgment will be reversed and cause remanded to the common pleas court for further proceedings not inconsistent with this opinion.

Vickery, PJ, and Levine, J, concur.