SWIFT & COMPANY, Inc., and Armour and Company, Appellants,

v.

Don J. WICKHAM, Commissioner of Agriculture and Markets of the State of New York, Appellee.

No. 348, Docket 30281.

United States Court of Appeals Second Circuit.

Argued May 2, 1966.

Decided July 12, 1966.

242

William J. Condon, New York City (William J. Colavito and William P. Woods, New York City, and Arthur C. O'Meara, Chicago, Ill., on the brief), for appellant Swift & Co.

George E. Leonard, Jr., and E. Gordon Robbins, Chicago, Ill., for appellant Armour & Co.

Philip Kahaner, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Joel Lewittes, Asst. Atty. Gen., New York City, on the brief), for appellee.

Thurgood Marshall, Sol. Gen., John W. Douglas, Asst. Atty. Gen., Jack S. Levin, Asst. to Sol. Gen., Sherman L. Cohn, Richard S. Salzman, Attys., Dept. of Justice, Washington, D. C., for the United States as amicus curiae.

Before LUMBARD, Chief Judge, and MOORE and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

Following a decision by the United States Supreme Court that it lacked jurisdiction on a direct appeal because the case was not properly one for a three-judge district court, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), appellants Swift & Company, Inc. (Swift) and Armour and Company (Armour) urge this court to reverse the decision of the district court for the Southern District

of New York which dismissed appellants' suit for a declaratory judgment to enjoin New York's Commissioner of Agriculture and Markets from interfering with appellants' sales of stuffed turkeys in interstate commerce. Appellants contend that enforcement of New York's labeling requirements against their shipments of turkeys would violate the Supremacy Clause of the United States Constitution in light of federal regulation under the Poultry Products Inspection Act of 1957, 21 U.S.C. §§ 451–469. The opinion below was written by Circuit Judge Friendly for the three-judge panel, and District Judge Croake individually arrived at the same conclusion. 230 F.Supp. 398, 410. As a timely appeal to this court was held in abeyance, pending possible review by the Supreme Court, the appeal is properly before us. 28 U.S.C. § 1291. See Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962). We affirm.

Swift and Armour pack frozen stuffed turkeys in Minnesota and Wisconsin and ship them into New York for sale to retailers who resell them to consumers. The turkeys are labeled at appellants' processing plants outside New York State to show the total weight of the stuffed bird. The labels were approved (in advance) by the Administrator of the Consumer and Marketing Service of the United States Department of Agriculture (Administrator) as satisfying the requirements of Section 8 of the Poultry Products Inspection Act:

> (a) * * * Each immediate container of any poultry product inspected under the authority of this chapter and found to be wholesome and not adulterated shall at the time such product leaves the official establishment bear, in addition to the official inspection mark, * * * the net weight or other appropriate measure of the contents, [etc]. 21 U.S.C. § 457.

The labels do not show the net weight of the unstuffed turkey.

Section 193(3) of New York's comprehensive Agriculture and Markets Law, 2B McKinney's Consol.Laws (1965 Supp.), provides:

> All food and food products offered for sale at retail and not in containers shall be sold or offered for sale by net weight, standard measure or numerical count under such regulations as may be prescribed by the commissioner [of Agriculture and Markets].

Though the phrase "net weight" appears in both statutes, the Director of the Bureau of Weights and Measures of the New York Department requires a label on stuffed turkeys to show the net weight both of the unstuffed and of the stuffed bird. This administrative interpretation is within the Commissioner's authority under the New York Act. See generally Mounting & Finishing Co. v. McGoldrick, 294 N.Y. 104, 60 N.E.2d 825 (1945).

As the state had threatened to prevent sale of their turkeys in New York unless labels showing the net weight of the stuffed and unstuffed birds were affixed, appellants applied in mid-1963 to the United States Department of Agriculture for federal approval of labels which would satisfy the New York requirement. The submitted labels were rejected by the head of the Poultry Products Section of the Inspection Branch of the Poultry Division of the Department's Consumer and Marketing Service.

The federal statute, 21 U.S.C. § 457(b), and the regulations, 7 C.F.R. § 81.130(c) (1966), permitted an appeal to the Administrator from the Poultry Division's rejection of appellants' proposed labels. Under these provisions, appellants could have requested a hearing, and could have appealed an adverse decision by the Administrator to a United States Court of Appeals. Rather than seek such administrative relief, appellants brought this action to have the New York statute and regulations declared unlawful and to enjoin their enforcement.

The complaint alleged that the New York law violated the Supremacy Clause because Congress in the Poultry Products

Inspection Act "exercised its power to the fullest with regard to poultry and poultry products," and, in the alternative, because the New York provisions were in direct conflict with the federal statute and regulations as interpreted.[1] After a three-day trial and the submission of briefs, the district court dismissed the complaint. It held that Congress through the Poultry Products Inspection Act did not "oust all weight regulation by states into which federally inspected poultry or poultry products are shipped," and that plaintiffs had failed to establish an irreconcilable conflict between the New York and federal statutes and regulations.

*Federal Preemption*

■ Appellants contend that the Poultry Products Inspection Act is a "broad comprehensive system of inspection and regulation of poultry and poultry products moving in interstate commerce," that the labeling portions of this legislation are an essential and integral part of the system, and that state laws additionally regulating the labeling of poultry products are therefore preempted. In treating this question, we begin with the Supreme Court's caution that, "[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that Congress has unmistakably so ordained." Florida Lime and Avocado Growers v. Paul, 373

U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

■ The lower court dealt exhaustively with the history and content of the federal Act and concluded that Congress had not preempted more detailed state regulation of the manner in which poultry products are weighed, measured and labeled. We find several reasons for agreeing with this conclusion. First, the principal focus of the federal law was to combat the distribution of adulterated poultry through a uniform scheme of federal inspection. We find no basis for concluding that Congress intended the incidental and less exhaustive labeling provisions to preempt this particular area of state regulation. Second, the Poultry Products Inspection Act's labeling provisions are similar to those in the federal Pure Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 321(k) (*l*) and (m), 331(a), (b), (i) and (k), which are not preemptive of state regulation. See Corn Prods. Ref. Co. v. Eddy, 249 U.S. 427, 39 S.Ct. 325, 63 L.Ed. 689 (1919). Finally, we find nothing in the nature of the subject matter being regulated—the disclosure of the net weight of poultry products—that requires a uniform national standard.[2] See Florida Lime and Avocado Growers v. Paul, 373 U.S. at 144, 83 S.Ct. 1218, 10 L.Ed.2d at 257. We agree with the district court and with the *amicus* brief of the Department of Justice that the Poultry Products Inspection Act does not preempt state regulation of the area in question.[3]

---

1. The complaint also alleged violations of the Commerce Clause and the Fourteenth Amendment. In ruling that the case was not properly one for a three-judge court, the Supreme Court held that these claims were "too insubstantial to support the jurisdiction of a three-judge court." 382 U.S. at 115, 86 S.Ct. at 261. We think the district court was clearly correct in dismissing these counts.

2. The Department of Agriculture itself recognizes this principle as the Application for Label Approval includes the notice:

Any approval of or comment concerning this labeling material or the working thereon as contained in this Notice

must be understood to represent the attitude of this Service only, and does not exclude failure to comply with other applicable Federal or State law, or city or municipal regulations.

3. Of course we do not pass upon whether other portions of the Poultry Products Inspection Act, such as the Act's scheme for on-site inspection, preempt similar state regulation. Section 18(a) of the Act, 21 U.S.C. § 467(a), provides that:

For the purpose of preventing and eliminating burdens on [interstate] commerce in poultry and poultry products, the jurisdiction of the Secretary within the scope of this Act shall be exclusive and poultry and poultry products shall

*Direct Conflict with Federal Law*

A more difficult question is whether an irreconcilable conflict has arisen between the Poultry Products Inspection Act and the New York Agriculture and Markets Act, as interpreted. Federal law prohibits the shipment of appellants' turkeys in interstate commerce without an approved label. 21 U.S.C. § 458(a). It is not practicable to thaw the birds after shipment to New York and make a supplemental weighing and labeling in conformance with state law at that time. Since the federal authorities have rejected a label showing the multiple weights required by New York law, and since the state will not permit the sale of stuffed turkeys absent such a label, at least the seeds of conflict are present.

The district court nonetheless held that an irreconcilable conflict had not been established. Starting with the premise that New York would accept a supplemental label showing the multiple weights required, Judge Friendly then noted that nothing in the federal Act indicated that such an additional label was necessarily unlawful.[4] Conceding that construction of the statutory phrase "net weight" was primarily a task for the Administrator, Judge Friendly nevertheless held that the Poultry Division's rejection of the particular labels submitted by Swift and Armour for approval in 1963 did not constitute a broad ruling "that any supplementary labeling of weight in addition to that satisfying the Department would be unlawful." Given this path to reconciliation of the statutory schemes, Judge Friendly concluded that appellants had not discharged their burden of establishing conflict because they had not sought a full-fledged hearing before the Administrator at which the State of New York's interests could be presented and perhaps satisfied.

Appellants' first argument is that, contrary to the assumption of the district court, New York would not permit the multiple weights it requires to be displayed on a supplemental label.[5] Therefore, appellants conclude, even the district court would now hold the New York scheme unlawful because the federal law, as interpreted by the Poultry Division, does not permit the multiple weights to be shown on the principal label which bears the federal markings.[6]

■ One answer to this contention is that there is insufficient evidence that New York would insist upon enforcing this regulation in the face of federal opposition. But a more fundamental problem with the argument is that it still assumes that the decision of the Poultry Division rejecting appellants' proposed "principal labels" should be accepted as representing the policy of the

---

be exempt from the provisions of the Federal Food, Drug, and Cosmetic Act, as amended, to the extent of the application or the extension thereto of the provisions of this chapter.

We are satisfied from an examination of the legislative history, see H.R.Rep. No. 465, 85th Cong. 1st Sess., 1957, 2 U.S. Code Cong. & Admin.News 1957, pp. 1630, 1635, and of the comparable scheme under the Meat Inspection Act, 21 U.S.C. §§ 71–79, that this section does not indicate a congressional intent to preempt the field of poultry labeling. However, the same would not necessarily be true with respect to the more essential inspection provisions of the Act. Compare Florida Lime and Avocado Growers, Inc. v. Paul, supra.

4. There is ample evidence in the record from which to conclude that attachment of a supplemental label would not be costly, and that the extra procedure involved would not create a danger of spoilage. There may be some likelihood that such a label would confuse the consumer. On the other hand, the fact that the weight of a turkey's stuffing may constitute anywhere from 16% to 35% of its total weight is a valid reason for the state's concern in having multiple weights shown.

5. Section 221.7 of the New York regulations provides:

The declaration of identity, if required and the net quantity statement shall appear on the principal display panel.

6. Appellants argue that "Congress has preempted the field with respect to the text of the federally approved label," but we think the argument is more properly viewed as tending to show irreconcilable conflict than preemption.

Department of Agriculture. Like the district court, we cannot accept this assumption in view of the appellants' failure to request a hearing at which the decision of the lower-echelon officials could be more fully explored.

■ Appellants attack this last aspect of the district court's decision by arguing that the Act gives the right to a hearing to one who "does not accept" the initial administrative ruling and therefore that it is improper to require them to appeal rulings which they "accept." But appellants only accept the Poultry Division's rulings for the purpose of challenging the "contrary" state regulation. While they cannot be compelled to appeal from these rulings, the strong policy against invalidating state regulatory schemes in the absence of a clear showing of irreconcilable conflict with federal law requires that this court not accept the Poultry Division's rulings without a further inquiry into their propriety. Compare Federal Power Comm'n v. Arkansas Power & Light Co., 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261, reversing per curiam 81 U.S.App.D.C. 178, 156 F.2d 821 (1946).

■ Appellants argue that, for a number of reasons, this is an inappropriate case to require them to pursue additional remedies within the federal agency. We disagree. As the lower court pointed out, uniform and accurate weights and measures are a traditional subject of state regulation. There is nothing in the federal Act or regulations that either requires the rejection of New York's definition of "net weight" or that condemns a labeling scheme that satisfies both current administrative interpretations. The reasons given by the Poultry Division in its letters rejecting appellants' proposed labels do not necessarily indicate that the two administrative positions are in hopeless conflict. In addition, the Deputy Director of the Poultry Division, called as a witness for the plaintiffs, testified that his department had as yet made no

attempt to "straighten out any alleged differences" with the New York authorities. We conclude that on this record the two legislative schemes have not been shown to be in irreconcilable conflict.[7]

Accordingly, we affirm the order of the district court. At the same time we suggest that the administrative agencies involved in this controversy should seek to resolve this unsettled situation without delay.

---

7. The Department of Justice, in its *amicus* brief, is in accord with our view that the record here is not sufficient to establish a conflict which warrants enjoining an otherwise valid state law.