BOUDIN, Chief Judge,
and DYK, Circuit Judge, Concurring.
The association standing question in this case is difficult. There is no well developed test in this circuit as to how the third prong of the Hunt test — whether *314 “the claim asserted [of] the relief requested requires the participation of individual members in the lawsuit,” Hunt v. Wash. State Apple Adver. Comm’n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)— applies in cases where injunctive relief is sought. This prong of the test is prudential rather than constitutional in nature, United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996), and there exists some latitude in case-by-case judgments.
That only injunctive relief is sought here distinguishes this case from damages cases; in those, association standing is precluded where the damages turn upon the varying circumstances of the individual plaintiffs. See Warth v. Seldin, 422 U.S. 490, 515-16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Where only injunctive relief is sought, an association may sometimes be allowed to sue even if some proof from individual non-party members is required; on the other hand, plenty of injunction . cases have been dismissed because of the need for indiyidualized proof.[10]
There is one decision in this circuit upholding association standing in a case dealing with injunctive relief. Playboy Enters. v. Pub. Svc. Comm’n of P.R., 906 F.2d 25 (1st Cir.1990), cert. denied, 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990). In that case, however, the impact on individual members necessary for injunctive relief was readily established as to at least one member. Furthermore, the challenged law in Playboy was a statute regulating expression; in such cases, courts are generally more inclined to permit jus tertii claims. See Osediacz v. City of Cranston, 414 F.3d 136, 140 (1st Cir.2005). Playboy is not an open door for association standing in all injunction cases where member circumstances differ and proof of them is important.
Sensibly, the Third Circuit in Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc., 280 F.3d 278 (3d Cir.2002), cert. denied, 537 U.S. 881, 123 S.Ct. 102, 154 L.Ed.2d 138 (2002), did not adopt an all-or-nothing test. The court there stated that it would allow for association standing if proof as to member circumstances were “limited,” but it noted that “conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry.” Id. at 286-87. This is not a complete compendium of relevant considerations, but it is a useful start.
In this case, putting to one side their generic weakness, individual takings claims could in principle be significantly strengthened or weakened by the particularized circumstances of each individual member. Furthermore, there appears to be considerable variation in each member company’s particular circumstances — for example, whether a member already discloses the information in question to its customers, the methods by which it stores copies of its contracts, and so on. The district court acted reasonably in concluding that in this case the association should not be allowed to sue as to the takings claim and that individual members should bring their own cases.
However, as we are dealing with a matter of prudential standing, the limitation has no Article III implications. Because at least some members could doubtless show that their materials were not disclosed and were well protected, the district court sensibly went on to forestall individ *315 ual actions that would inevitably follow a dismissal of the association’s takings claim on standing grounds. It correctly held that even if association standing were assumed to be adequate, such takings claims fail on the merits.
Putting aside a separate threshold concern,[11] the Supreme Court in Ruckelshaus v. Monsanto, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), made clear that trade secrets — as defined by state law — can constitute property interests for Takings Clause purposes. Id. at 1003-04, 104 S.Ct. 2862. It is far from clear that the Maine courts would find the information required to be disclosed here to represent a trade. secret under Maine law. However, as there is no definitive state court judgment on this issue, it is possible that the information sought to be disclosed could potentially represent a valid property interest for Takings Clause purposes.
Nevertheless, even assuming a property interest, the Maine statute does not work a full taking. It does not confiscate the supposed trade secret in the conventional sense; at most, it requires limited disclosure to customers of transactions possibly adverse to the customers’ interests, which may reduce the value of the trade secret to the PBM. PBMs may still negotiate rebate contracts with drug companies, but their plan customers may — as a result of PBMs’ disclosures — look elsewhere for benefits management.
In this context, a takings claim is far from straightforward. In Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court — while noting that such analyses are “essentially ad hoc, factual inquiries” — outlined three relevant factors in determining whether a regulation effects a taking: (1) “the extent to which the regulation [would] interfere[.] with distinct investment-backed- expectations”; .(2) “[t]he economic impact of the regulation on the claimant”; and (3) “the character of the governmental action.” Id. at 124, 98 S.Ct. 2646. Given the absence of a full-scale taking and the presence of a traditional regulatory interest, it is enough to defeat the takings claim that no reasonable investment-backed expectation is present at all. See Good v. United States, 189 F.3d 1355, 1363 (Fed.Cir.1999), cert. denied, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000).
Under the terms of the statute, the PBMs’ disclosure requirements run only to their “covered entity” customers and apply only to contracts entered into or renewed after the statute’s effective date, namely, September 13, 2003 (three months after the statute was enacted). As the district court noted, PBMs and drug manufacturers typically negotiate their rebate terms on an annual basis. More than two years have elapsed since the statute gave warning of the new regime (in June 2003), so one-year rebate contracts negotiated before that, date have expired or have been renewed in the teeth of the statute, and any rebate contracts first entered into after June 2003 would have been made with knowledge of the statute’s requirements. There is no basis for forward-looking in-junctive relief with respect to rebate contracts entered into after the statute’s effective date.
Even as applied to trade secrets arising before the statute’s effective date, the stat *316 ute would not constitute a taking. “A manufacturer or vendor has no constitutional right to sell goods without giving to the purchaser fair information of what it is that is being sold.” Corn Prods. Ref. Co. v. Eddy, 249 U.S. 427, 431, 39 S.Ct. 325, 63 L.Ed. 689 (1919). PBMs should therefore have expected the' possibility that they would have to disclose to their covered entity customers information needed to forestall what could reasonably be deemed abusive control. PBMs are undoubtedly aware of the heavily regulated nature of the healthcare industry; in fact, as' the district court noted, they are already subject to extensive regulation under federal and state law.
If PBMs truly assumed that they would be free from disclosure requirements of the sort set forth in the Maine law here, this would be more wishful thinking than reasonable expectation. Whether or not the law strikes the right economic balance between competing producer and consumer interests, it is no more a taking than the requirement that public corporations disclose private corporate information about financial prospects to the public through regular SEC filings.
Lastly, PCMA’s First Amendment claim is completely without merit. So-called “compelled speech” may under modern Supreme Court jurisprudence raise a serious First Amendment concern where it effects a forced association between the speaker and a particular viewpoint. See, e.g., Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (requiring all New Hampshire drivers to display “Live Free or Die” on their license plates); Miami Herald Publ’g Co. v. Tornillo, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (requiring newspapers to afford political candidates a right to reply to editorial critiques).
What is at stake here, by contrast, is simply routine disclosure of economically significant information designed to forward ordinary regulatory purposes — in this case, protecting covered entities from questionable PBM business practices. There are literally thousands of similar regulations on the books — such as product labeling laws, environmental spill reporting, accident reports by common carriers, SEC reporting as to corporate losses and (most obviously) the requirement to file tax returns to government units who use the information to the obvious disadvantage of the taxpayer.
The idea that these thousands of routine regulations require an extensive First Amendment analysis is mistaken. Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), makes clear “that an advertiser’s rights are adequately protected as long as disclosure requirements are reasonably related to the State’s interest in preventing deception of consumers.” Id. at 651, 105 S.Ct. 2265. This is a test akin to the general rational basis test governing all government regulations under the Due Process Clause. The test is so obviously met in this case as to make elaboration pointless.

. E.g., Ga. Cemetery Ass’n. v. Cox, 353 F.3d 1319, 1322 (11th Cir.2003); Rent Stabilization Ass’n. v. Dinkins, 5 F.3d 591, 596-97 (2d Cir.1993); Kan. Health Care Ass’n. v. Kan. Dept. of Soc. & Rehab. Svcs., 958 F.2d 1018, 1022-23 (10th Cir.1992).

. Typically, no injunctive relief claim based on taking would be ripe until state compensation remedies were exhausted, Williamson County Reg'l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), but because there may be some circumstances that avoid this bar, see Philip Morris, Inc. v. Reilly, 312 F.3d 24 (1st Cir.2002) (en banc), we do not address this issue.