PHARMACEUTICAL SOCIETY OF the STATE OF NEW YORK, INC., Brendan Lawler, Dr. Allan H. Bruckheim, and Marilyn Stuzin, Plaintiffs,

v.

Louis LEFKOWITZ, Albert J. Sica, Gordon M. Ambach, and Robert P. Whalen, Defendants.

No. 78 Civ. 1420 (VLB).

United States District Court,
S. D. New York.

June 22, 1978.

Jacobson & Goldberg, Garden City, N.Y., for plaintiffs.

Louis J.·Lefkowitz, Atty. Gen., New York City by A. Seth Greenwald, New York City, for defendants.

## MEMORANDUM ORDER

BRODERICK, District Judge.

An individual pharmacist, a physician, a consumer patient, and the Pharmaceutical Society of the State of New York seek to enjoin the implementation of Chapter 776 of the Laws of 1977 of the State of New York. The challenged statutes, which became effective on April 1, 1978, provide that under certain circumstances pharmacists are to furnish to consumer-patients less expensive drugs which are bioequivalent to those that have been prescribed for them. A hearing on plaintiffs' application for a preliminary injunction was held on April 7, 1978.[1]

---

1. A temporary restraining order, issued on March 30, 1978, was vacated on March 31, 1978, upon the stipulation that no sanctions would be taken or disciplinary proceedings commenced by the New York State Department of Health or the New York State Board of

## I.

In accordance with the reasoning set forth below, I find that this is an appropriate case to invoke the discretionary doctrine of abstention, and the application for a preliminary injunction is denied. *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The case is placed on the suspense docket pending rulings by the New York State courts on the specific interpretation to be accorded the statutes at issue.

In 1977 the New York State Legislature passed Chapter 776 of the Laws of 1977 amending the Public Health Law and the Education Law by adding Public Health Law Section 206(1)(o ) and Education Law Sections 6810(6) and 6816–a ("the generic drug laws").[2] The purpose of the generic

Pharmacy for any violations of Chapter 776 occurring on or before the hearing on April 7, 1978. Upon completion of the hearing, decision was reserved on the issue of the preliminary injunction, and the temporary restraining order was not reinstated.

2. These statutes provide:
N.Y. Public Health Law § 206 (McKinney 1971)
1. The commissioner shall:
\* \* \* \* \* \*
(o) establish and publish a list of drug products, each of which shall meet the following conditions:
(1) The drug product has been certified or approved by the commissioner of the Federal Food and Drug Administration as being safe and effective for its labeled indications for use, and a new-drug application or an abbreviated new-drug application approved pursuant to the Federal Food, Drug, and Cosmetic Act is held for such drug product; and
(2) The commissioner of the Federal Food and Drug Administration has:
(i) not proposed or promulgated a regulation to establish a bioequivalency requirement for such drug product, or
(ii) proposed a regulation to establish a bioequivalency requirement for such drug product and subsequently has determined not to promulgate such regulation for such drug product, or
(iii) promulgated a regulation to establish a bioequivalency requirement for such drug product and has approved a supplemental application that provides evidence that the drug product meets the bioequivalency requirement.
N.Y. Education Law § 6810(6) (McKinney 1972)
(a) Every prescription written in this state by a person authorized to issue such prescription shall be on prescription forms containing two lines for the prescriber's signature. There shall be a signature line in the lower right hand corner of the prescription form beneath which shall be clearly imprinted the words "substitution permissible"; there shall be a signature line in the lower left hand corner of the prescription form beneath which shall be clearly imprinted the words "dispense as written." The prescriber's signature on either signature line shall validate the prescription and shall designate approval or disapproval of substitution by a pharmacist of a drug product pursuant to paragraph (o) of subdivision one of section two hundred six of the public health law. Imprinted conspicuously on the prescription forms shall be the words: "This prescription will be filled generically unless physician signs on line stating 'dispense as written.' "
(b) If the prescriber designates approval of substitution he shall inform the patient that the pharmacist will substitute a drug product pursuant to paragraph (o) of subdivision óne of section two hundred six of the public health law.
(c) The provisions of this subdivision shall not apply to a hospital as defined in article twenty-eight of the public health law.
N.Y. Education Law § 6816–a (McKinney 1972)
When substitution is required.
1. A pharmacist shall substitute a less expensive drug product containing the same active ingredients, dosage form and strength as the drug product prescribed, ordered or demanded, provided that the following conditions are met:
(a) The prescription is written on a form, which meets the requirements of subdivision six of section sixty-eight hundred ten of this article and the prescriber places his signature above the words, "substitution permissible", or in the case of oral prescriptions, the prescriber must expressly state that substitution shall be permitted; and
(b) The substituted drug product is contained in the list of drug products established pursuant to paragraph (o) of subdivision one of section two hundred six of the public health law; and
(c) The pharmacist shall indicate on the label affixed to the immediate container in which the drug is sold or dispensed the name and strength of the drug product and its manufacturer unless the prescriber specifically states otherwise. The pharmacist shall record on the prescription form the brand name or the name of the manufacturer of the drug product dispensed.

drug laws ostensibly is to make available to consumers cheaper generic drugs in lieu of more expensive brand name drugs which have been prescribed for them by physicians and others authorized by law to write medical prescriptions. The amended law requires the Commissioner of Health of the State of New York to establish and publish a list of drug products approved by the commissioner of the Federal Food and Drug Administration ("FDA") as being safe and effective and which have not been identified by the FDA as having any problem of bioequivalency. Such a list was compiled prior to the effective date of the generic drug laws. Upon reviewing the list, the FDA issued a release advising New York that the State's newly published drug list is "an accurate guide to prescription drugs considered by FDA to be safe, effective and equivalent in therapeutic performance." The FDA further suggested that the list may be useful to other states with similar generic drug laws.[3]

The generic drug laws require that every prescription form contain two lines for the prescriber's signature, one line to read "substitution permissible" and the other line to read "dispense as written." The prescription form must also contain the legend: "This prescription will be filled generically unless physician signs on the line stating 'dispense as written'." If the prescriber approves a substitution he must inform the patient that the pharmacist will substitute a cheaper drug product. N.Y. Education Law § 6810(6) (McKinney 1972).

Plaintiffs suggest four separate grounds which, they urge, provide legal bases to enjoin the operation of the generic drug laws:

(1) the federal government has prescribed a comprehensive system of regulation in this area, evincing an intent to pre-empt regulation by the states under the Supremacy Clause of the Constitution;

(2) The generic drug laws violate the Commerce Clause of the United States Constitution in that in certain circumstances drugs may not be sold although approved by the FDA as safe and effective;

(3) The generic drug laws are violative of the Fifth and Fourteenth Amendments to the United States Constitution in various particulars: thus pharmacists are required to sell generic drugs manufactured by companies in which they may not have confidence, and yet the pharmacists must rely on the financial soundness and the adequacy of the insurance protection of those manufacturers for indemnity or contribution in the event of suits; certain groups are illogically excluded from the provisions of the statutes; and implementation of the new law will interfere with the rights of physicians and pharmacists to practice their professions; and

■ (4) Implementation of the generic drug laws will constitute an unconstitutional invasion into the rights of privacy of doctors, pharmacists and consumer patients.[4] While many of plaintiffs' underlying arguments overlap, I shall discuss the four grounds seriatim, as presented in plaintiffs' papers.

## II.

Plaintiffs allege that the generic drug laws violate the Supremacy Clause (U.S. Const. Art. VI, cl. 2) in the following significant respects:

1. Pre-1938 drugs approved for sale by the FDA are excluded from the New York list of substitutes, and thus their substitution and sale are prohibited in spite of FDA approval.

---

2. In the event a patient chooses to have a prescription filled by an out of state dispenser, the laws of that state shall prevail.

3. *See* U.S. Department of Health, Education and Welfare News Release (January 23, 1978) appended to New York City Department of Consumer Affairs Notice of Motion (April 11, 1978) submitted amicus curiae.

4. Plaintiffs' claims that the list of substitutes has not been circulated, and that there has been insufficient time to stock generic equivalents, are not properly before me. The extent to which the state is or is not prepared to implement the new laws is more appropriately a concern of the New York State courts.

2. If a pharmacy is out of stock of generic equivalent and a prescription for a brand-name drug specifies "substitution permissible", the pharmacist is prohibited from selling the brand name drug actually prescribed, although it is FDA approved.

3. New York requires the manufacturer to be identified on the labels of drug containers, although the FDA does not.

In *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978) the Supreme Court, drawing from prior cases, *e. g., Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed. 604 (1975) and *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), enunciated five areas for inquiry in determining whether Congress intended to foreclose state legislation in a particular area:

(a) Is the scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it?

(b) Is the federal interest so dominant that the federal system should be assumed to preclude enforcement of state laws on the same subject?

(c) Do the object sought to be obtained by the federal law, and the character of the obligations imposed by it, reveal an intent to preclude state involvement?

(d) Does the state statute actually conflict with a valid federal statute?

(e) Does the state law stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress? *Ray*, 46 U.S.L.W. 4201–02.

█ Consideration of these factors must begin with a recognition that the historic police powers of the state are assumed to subsist absent the showing of a clear and manifest purpose by Congress to the contrary. *Ray, supra* at 4201. Based on a review of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* and the few cases that have addressed the issue, I am persuaded that Congress has not legislatively expressed an intent to preclude states from entering the area of drug regulation. *See Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Thus whereas federal concern has been with the *safety* and *efficacy* of prescription drugs, the generic drug laws (as well as those statutes they amend) address the *sale* of prescription drugs.[5] They in fact advance ends which the Supreme Court has recognized as constitutionally protected. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

FDA-approved drugs may always be sold in New York if they are appropriately prescribed. A prescription of brand name drugs must be filled as prescribed if the prescriber directs on the prescription: "dispense as written." If drugs are prescribed by generic name, the requirements of the generic drug laws do not apply, and the generic will be dispensed.[6]

█ With respect to New York's variation of labeling requirements, states are not barred from regulating product labeling, they are only limited where the labels or warnings pertain to problems which have already been addressed by the federal government. *See Cosmetic, Toiletry & Fragrance Ass'n v. State of Minnesota*, 440 F.Supp. 1216, 1223 (D.Minn.1977); *Corn Products Refining Co. v. Eddy*, 249 U.S. 427, 39 S.Ct. 325, 63 L.Ed. 689 (1919); and *Swift & Company, Inc. v. Wickham*, 364 F.2d 241 (2d Cir. 1966).

**5.** Sales practices have been subjected to statutory regulation which has been considered and upheld by New York State courts. *See e. g., Dutchess County Pharmaceutical Society v. State of New York*, 47 A.D.2d 627, 363 N.Y. S.2d 644 (2d Dept. 1975), *aff'd*, 38 N.Y.2d 887, 382 N.Y.S.2d 746, 346 N.E.2d 548 (1976).

**6.** Plaintiffs object to the non-inclusion of certain generics on the list of acceptable substitutes, but the FDA has reviewed the New York listing and noted no problem. *See* Hearing Transcript, Direct of Gene Knapp, at 9 (April 7, 1978). I shall not address this further until New York State courts have had an opportunity to construe the statutes.

■ There does not appear to be a direct conflict between the state and federal laws, and I reject plaintiffs' claims of federal preemption.

### III.

■ Plaintiffs' claims under the Commerce Clause of the Constitution (U.S. Const. Art. I, § 8, cl. 3) are based upon the assumption that the words "substitution permissible" as used in the generic drug laws (which require that these words be used on prescription forms) mean "substitution mandatory." The New York State Board of Health and the New York State Board of Pharmacy quite early in the game issued communications interpreting the words "substitution permissible" as mandating substitution.[7] If such is to be the interpretation accorded the New York statute, then prescribed brand name FDA-approved drugs could not be sold to fill a prescription marked "substitution permissible," even were the pharmacist to be out of stock in the cheaper bioequivalent generic drug. Plaintiffs assert that such an interpretation would violate the Commerce Clause in that it would constitute a barrier to the free flow of commerce.

When a federal constitutional issue is presented which might be mooted by a state court determination of pertinent state law, it is proper for a federal court to abstain. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *see Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In my judgment New York State's courts should interpret the generic drug laws in the first instance, and I shall not predict how the New York courts will construe the words "substitution permissible." *Carey v. Sugar*, 425 U.S. 73, 77, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). I certainly do not intend to anticipate that their interpretation will be inconsistent with the Constitution. Abstention is appropriate. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

### IV.

Plaintiffs assert that the generic drug laws create artificial and constitutionally unreasonable distinctions in that (1) their provisions do not apply to prescriptions filled in hospital pharmacies or out-patient pharmacies; (2) their provisions do not apply to written or oral prescriptions using generic designations; and (3) their provisions do not apply to prescriptions written by out-of-state physicians but filled within the state. Plaintiffs also argue that the laws unconstitutionally require pharmacists to sell products (certain generic substitutions) in which they do not have confidence and for whose defects pharmacists are subject to suit. They further contend that the rights of the plaintiff-physician and of the plaintiff-pharmacist to practice their pro-

---

7. Originally, differing interpretations were issued by the New York State Board of Pharmacy and the New York State Health Department. On February 15, 1978, the Board of Pharmacy had opined that "[i]f the prescriber has authorized substitution and the pharmacist has no less expensive equivalent in stock, the pharmacist may dispense the available product." Plaintiffs' Exhibit 1 at 4 (Hearing April 7, 1978). This interpretation was revised by a subsequent communication on March 30, 1978. Plaintiffs' Exhibit 2 (Hearing April 7, 1978). Accordingly, the interpretations by the Board of Pharmacy and by the State Health Department are consistent in reading the phrase "substitution permissible" to mean "substitution mandatory."

If the prescriber has authorized substitution and the pharmacist has no less expensive equivalent in stock, the pharmacist may *not* fill the prescription as written. The pharmacist has an obligation to advise the customer either that the pharmacy does not stock a less expensive equivalent or that its stock of a less expensive equivalent is temporarily depleted, as the case may be, and that the customer may either have the prescription filled at another pharmacy or may await restocking of a less expensive equivalent at the pharmacy where the prescription was first presented.

Revised Notice on Drug Substitution Law, March 30, 1978 issued by The State Education Department, State Board of Pharmacy, received as Plaintiffs' Exhibit 2 at Hearing, April 7, 1978.

fessions without arbitrary restriction by the state are violated by the challenged laws.

The right to practice one's profession is not without permissible limitation, and limiting state statutes have successfully withstood constitutional challenge. *See e. g., Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). However, the limitation must bear a relation to the calling or profession, and compliance must be reasonably attainable. *Dent v. West Virginia*, 129 U.S. 114, 122, 9 S.Ct. 231, 32 L.Ed. 623 (1888).

The very nature of the doctor-patient-pharmacist relationships precludes unjustified state presence. The patient must be free to choose his doctor and pharmacist: for the physician and pharmacist there are acts to be done and decisions to be made. Oversight imposed by statute should not so rigorously restrict that freedom to choose, or so narrowly confine the capacity to do those acts and to make those decisions, as to deny liberty without any discernible compelling state interest. *Doe v. Bolton*, 410 U.S. 179, 213, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

While these claims of plaintiffs seem to have some vitality, the record is factually deficient to enable me to determine them. Here, too, abstention is appropriate. Moreover, it would be a needless duplication of effort to develop an adequate record here and in the New York State courts. In the interest of judicial economy I shall abstain from a decision on these issues and retain jurisdiction should review be required at a later date.

### V.

The Supreme Court has recognized that one aspect of the "liberty" protected by the Due Process Clause of the Four-

teenth Amendment is "a right of personal privacy, or a guarantee of certain areas or zones of privacy. . . . " *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). This right of personal privacy includes "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). The making of decisions vital to health care falls within this area of liberty protected. Accordingly, a state statute may not deprive a consumer of the "right to decide independently, with the advice of his physician, to acquire and to use needed medication." *Whalen, supra*, at 603, 97 S.Ct. at 878.

The generic drug laws limit the prescriber to two prescription alternatives: (1) "dispense as written" or (2) "substitution permissible." A prescription denoted "dispense as written" requires a pharmacist to supply only the specific drug prescribed—no substitution is permitted. With respect to prescriptions marked "substitution permissible," a construction of those words to mean "substitution mandatory" would preclude sale of the brand drug prescribed and thus would interfere with a consumer-patient's right to acquire and to use needed medication which has satisfied FDA standards.[8] Whether such interference would rise to constitutional magnitude need not be determined at this point. An interpretation of the words "substitution permissible" to mean exactly that would obviate the need to determine whether requiring mandatory substitution would be consistent with Constitutional standards. The New York State courts have yet to review the matter, and abstention is appropriate.

### VI.

*Preliminary injunction.* A preliminary injunction is properly issued where

---

8. I am cognizant of the ostensible purpose of the generic drug laws and the possibilities for circumvention by pharmacists who fail to stock an adequate supply of generic substitutes. However, an attempt to insure sufficient supplies of generic equivalents by requiring "mandatory substitution" might not pass constitutional muster. *Whalen v. Roe*, 429 U.S. 589, 603, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). New York State does regulate pharmacies, N.Y. Education Law § 6800 *et seq.* (McKinney 1972), and a more direct approach to insure compliance with the spirit of the statutes might be equally successful without incidentally encroaching upon patient-physician (prescriber) rights.

there is 1) showing of probability of success on the merits, or at the minimum, serious questions on the merits establishing a fair basis for litigation; and 2) showing of irreparable harm, and if probability of success has not been shown, a balance of hardships tipping toward plaintiff. *State of New York v. Nuclear Reg. Com'n*, 550 F.2d 745 (2d Cir. 1977); *Sonesta Int'l. Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973). There has indeed been a showing of serious questions on the merits establishing a fair basis for litigation. As already noted, the generic drug laws have not yet been construed by New York State courts, and it is my judgment that abstention is appropriate with respect to the constitutional issues raised. If the New York courts interpret these statutes in a manner consistent with the Constitution there will be no irreparable injury. I deny the request for preliminary relief.

Jurisdiction is retained and the case is hereby placed on the suspense docket pending rulings by the New York State courts on the specific interpretation to be accorded the statutes at issue.[9]

SO ORDERED.

---

9. Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), (3) and (6). In light of the disposition herein, I need not address that motion at this time.