586 F.2d 953
 PHARMACEUTICAL SOCIETY OF the STATE OF NEW YORK, INC.,
Brendan Lawler, Dr. Allan H. Bruckheim and Marilyn
Stuzin, Plaintiffs-Appellants,
v.
Louis LEFKOWITZ, Albert J. Sica, Gordon M. Ambach and Robert
P. Whalen, Defendants-Appellees.
 No. 147, Docket 78-7326.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1978.
Decided Nov. 1, 1978.
 
 Leon Friedman, Hempstead, N. Y. (Jacobson & Goldberg, Garden City, N. Y., of counsel), for plaintiffs-appellants.
 A. Seth Greenwald, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of State of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 This interlocutory appeal concerns a challenge, on federal constitutional grounds, to New York's generic drug substitution law, Chapter 776 of the Laws of New York, 1977 (hereinafter called the "Generic Drug Act" or "the Act"), which provides, subject to certain conditions, for the druggist's dispensing cheaper generic drugs in lieu of trade name drugs in filling doctors' prescriptions. The Southern District of New York, Vincent L. Broderick, Judge, denied plaintiffs-appellants' motion for a preliminary injunction, invoking the abstention doctrine announced by the Supreme Court in Railroad Commission v. Pullman Co., 312 U.S. 496, 499-501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). While the applicability of the abstention doctrine is questionable, we affirm for the reason that in any event appellants fail to meet basic requirements for issuance of preliminary injunctive relief.
 
 
 2
 Plaintiffs-appellants are the Pharmaceutical Society of the State of New York (a New York not-for-profit corporation), a registered pharmacist, a physician, and a patient-consumer. They challenge the constitutionality of the Generic Drug Act, which amended New York's Public Health and Education Laws by adding Public Health Law § 206(1)(O ) and Education Law §§ 6810(6) and 6816-a. Section 206(1)(O ) of the Public Health Law provides that the Commissioner of Health of the State of New York shall establish and publish a list of drug products which have been certified or approved by the Federal Food and Drug Administration (FDA) as safe and effective for their labeled uses and which are not questioned by the FDA as failing to meet bioequivalency requirements. Section 6810(6) of the Education Law provides that every prescription form shall have two signature lines, one stating "substitution permissible" and the other stating "dispense as written." If the "substitution permissible" line is signed by the physician, then the physician must inform the patient that the pharmacist "will substitute" a generic drug product on the list established under Public Health Law § 206(1)(O ).
 
 
 3
 Section 6816-a of the Education Law provides that the pharmacist "shall substitute a less expensive drug product containing the same active ingredients, dosage form and strength as the drug product prescribed" if the prescription indicates "substitution permissible"[1] and the substituted drug product is on the established list. The label on the immediate container in which the generic drug is dispensed must reflect the name and strength of the drug product and its manufacturer.
 
 
 4
 Appellants argue that the Generic Drug Act is unconstitutional on several grounds. First, they assert that on its face it creates an excessive burden on interstate commerce by prohibiting the sale of a safe and effective drug product (i. e., the higher priced brand name drug) solely because of its price. Next, they contend that the Act violates the Supremacy Clause because the Federal Food, Drug, and Cosmetic Act[2] preempts the regulation of drug products. It is also claimed that the Generic Drug Act impermissibly infringes on the right of privacy of the patient-consumer. Finally, appellants assert that the Act violates the Equal Protection Clause because it discriminates between pharmacists and other professionals.
 
 
 5
 Judge Broderick denied appellants' application for a preliminary injunction against enforcement of the Act by the defendants. He rejected the federal preemption claim, finding no direct conflict between federal regulation, which deals with the safety and efficacy of prescription drugs, and state regulation, which is aimed at the sale of such drugs. He also noted that New York's labeling requirement, while varying from federal guidelines, did not address the same problems for which the federal requirements were designed. He abstained under the Pullman doctrine from deciding the Commerce Clause issue, concluding that a New York court should interpret the words "substitution permissible" in the first instance since in his view a ruling that the Act permitted but did not require substitution would moot the constitutional issues. He also abstained from deciding the equal protection and right of privacy claims, reasoning that there would be no irreparable injury if the state courts interpreted the Act to mean that substitution was permissible but not mandatory.
 
 DISCUSSION
 
 6
 Pullman abstention is a limited judge-made doctrine created by the Supreme Court in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). That case established that "in special circumstances, where resolution of a federal constitutional issue is controlled by the interpretation of an unclear or complex state statute that is susceptible to a construction which would avoid or modify the necessity of a constitutional adjudication, the federal court should defer to the state court's interpretation of its own statute." McRedmond v. Wilson, 533 F.2d 757, 760 (2d Cir. 1976). The policy behind Pullman was to avoid friction between federal and state authorities in those cases where the federal court judgment could only be an advisory "forecast" of how the state's highest court would finally interpret state law. Railroad Commission v. Pullman Co., supra, 312 U.S. at 499-501, 61 S.Ct. 643.
 
 
 7
 Three conditions must be met before Pullman abstention is appropriate: (1) the state statute must be unclear, (2) the resolution of the federal constitutional issue must depend on the state law interpretation, and (3) it must be possible to interpret the state law so as to modify or avoid the federal issue. See McRedmond v. Wilson, supra, 533 F.2d at 761. See also Shelton v. Smith, 547 F.2d 768, 770 (2d Cir. 1976); Connecticut State Federation of Teachers v. Board of Education Members, 538 F.2d 471, 483-84 (2d Cir. 1976); cf. Naprstek v. City of Norwich, 545 F.2d 815, 817-18 (2d Cir. 1976) (abstention improper when state court construction of statute cannot avoid adjudication of the constitutional issue).
 
 
 8
 These necessary conditions do not appear to have been met in this case. The state statute is not unclear. Although § 6810(6) of the N.Y. Education Law provides that a prescription form shall bear a line entitled " substitution Permissible " (emphasis supplied), which the doctor may sign instead of the line "dispense as written," § 6816-a of the Education Law, which is entitled "When substitution is Required " (emphasis supplied), specifically directs that the pharmacist "Shall substitute a less expensive drug product" if the doctor signs the "substitution permissible" line, N.Y. Education Law (McKinney) § 6816-a (emphasis supplied), and § 6810(6)(b) requires the doctor signing the latter line to advise his patient that "the pharmacist Will substitute" a generic equivalent found on the list approved under § 206(1)(O ) of the Public Health Law (emphasis supplied). Moreover, both sides here agree that under the Act, "If substitution is permitted by the doctor, the druggist then Must substitute the generic drug product (presumably less expensive) provided such product is on the Health Commissioner's list." Appellees' Brief, p. 3 (emphasis supplied); Appellant's brief, p. 22 ("there is no question that the law mandates substitution of a cheaper generic drug when it is available").
 
 
 9
 In the face of the statute's mandatory language and its interpretation as such by the parties, it is unlikely that it would be construed as authorizing a druggist to furnish a prescribed trade name drug in lieu of a lower priced FDA-approved generic substitute on the ground that the mandatory language was modified by the word "permissible." While there may be some ambiguity about the proper application of the new law when the pharmacist has no less expensive generic substitute in stock and the physician indicates " substitution permissible,"[3] a state court resolution of that ambiguity cannot avoid or materially modify the constitutional issues, which are raised in the context of both brand name and generic drugs being available at the drug store. Only a state court ruling that the Act makes substitution unqualifiedly permissive, never mandatory, could avoid or modify all of the constitutional issues. However, such a ruling would require the state court to ignore the plain language of the Act. Abstention could hardly be justified on the theory that the state court might invent an interpretation at odds with the statute's clear language.
 
 
 10
 In Naprstek v. City of Norwich, supra, this court reversed a district court's decision to abstain in a case challenging a city curfew ordinance on grounds of unconstitutional vagueness due to the lack of a cut-off time. The court reasoned that a state court could not supply the missing term, which would require legislative enactment, and therefore there was nothing for the state court to construe. 545 F.2d at 818. So too in this case the state court would have to act as a legislature, rewriting the Act, to avoid the constitutional issues. The possible benefit from abstention would be extremely speculative. See Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 481, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). When a state statute appears clear on its face, Pullman abstention is not favored, McRedmond v. Wilson, supra, 533 F.2d at 761-62; Image Carrier Corp. v. Beame, 567 F.2d 1197, 1201 (2d Cir. 1977).
 
 
 11
 Whether or not it was proper to deny injunctive relief on grounds of abstention, appellants have failed to make out a case for such relief on the merits. A preliminary injunction will issue only upon proof that it is needed to forestall a threat of irreparable harm. The party seeking relief must make a clear showing of probable success on the merits and possible irreparable injury, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party seeking relief. Kampmeier v. Nyquist, 553 F.2d 296, 299 (2d Cir. 1977); New York v. Nuclear Regulatory Commission, 550 F.2d 745, 750 (2d Cir. 1977); Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973). Appellants here have failed to establish either likelihood of success on the merits or irreparable injury.
 
 
 12
 Turning first to appellants' Commerce Clause claim, we are not here confronted with a state law designed to discriminate against out-of-state manufacturers, which might be viewed with some suspicion, see, E. g., Great Atlantic & Pacific Tea Co. v. Cottrell, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976), but with a law intended solely for the benefit of consumers. In determining whether it unduly burdens commerce the test is whether "the burden imposed on (interstate) commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Here the local benefit is the potential saving to New York patient-consumers based on the price differentials between brand name drugs and lower-priced generic equivalents, which represents a legitimate interest. See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 763-64, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). When the doctor, as is his or her right, signs the line "dispense as written" no burden on interstate commerce is claimed.[4] If, on the other hand, the doctor signs the "substitution permissible" line, the statute could conceivably burden commerce to the extent that the flow of the more expensive brand name drug prescribed by the doctor would be restricted. However, "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States." Great Atlantic & Pacific Tea Co. v. Cottrell, supra, 424 U.S. at 371, 96 S.Ct. at 928. Appellants have not shown that the burden here would be "clearly excessive" compared to the benefit. Presumably different doctors will prescribe different brands of any given drug, and it is unclear how many physicians will require the prescription to be dispensed as written. Also, it appears that the pharmacist retains the right, if substitution is permitted by the physician, to choose between less expensive generic equivalents which may differ substantially in price. There is no showing, therefore, that the sale of any particular manufacturer's drug or of all brand name drugs will necessarily be restricted by the Act to such an extent that the burden on interstate commerce is unconstitutional.
 
 
 13
 Similarly, appellants' federal preemption claim is insufficient to support a grant of preliminary injunctive relief. The criteria for determining whether there has been federal preemption are (1) the pervasiveness of the federal regulation, (2) the dominance of the federal interest, (3) the federal and state objectives to be obtained, and (4) the existence of actual conflict between the state and federal statutes, including whether the state law is an obstacle to the purposes and objectives of Congress. Ray v. Atlantic Richfield Co., 435 U.S. 151, 157-58, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). Application of these criteria precludes a finding that the New York statute is preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, Et seq. The federal law is concerned with controlling the safety and efficacy of certain products, including drugs. See United States v. Diapulse Corporation of America, 457 F.2d 25, 27-28 (2d Cir. 1972). The objective of the New York legislation is to regulate the sale of drugs to the limited extent of preventing the patient-consumer from being forced to pay the higher price of brand name drugs when less expensive generic equivalents are available and his physician is willing to permit use of the substitute. Determination of the safety and efficacy of the generic substitutes remains the function of the FDA.
 
 
 14
 Thus there is no actual conflict between the federal and state statutes. The Generic Drug Act does not ban any FDA-approved drug[5] and it does not frustrate Congress' purpose in enacting the Food, Drug, and Cosmetic Act, since the same federal agency (the FDA) still determines the safety and bioequivalency of generic substitutes that are furnished under the New York Act. Moreover, other state regulations not dealing with the safety or efficacy of drugs per se have been upheld, see, e. g., Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The federal statute is not so pervasive as to remove the states entirely from the field of drug regulation. Appellants have failed to establish federal preemption.[6]
 
 
 15
 Appellants also fail to make an adequate showing of an invasion of the patient-consumer's right of privacy. The Supreme Court has acknowledged "the interest in independence in making certain kinds of important decisions," Whalen v. Roe, supra, 429 U.S. at 599-600, 97 S.Ct. at 876, including "the (patient's) right to decide independently, with the advice of his physician, to acquire and to use needed medication." Id. at 603, 97 S.Ct. at 878. There is no infringement on that right by the Generic Drug Act. The decision to use a brand name or generic drug, and which brand name to use, remains as before with the doctor and the patient; the provisions of the Generic Drug Act only come into play After their initial choice (usually that of the doctor) has been made between "dispense as written" and "substitution permissible." Here, as under prior law, there is no deprivation of the right of the patient, with the advice of his or her doctor, to decide on the proper medication.
 
 
 16
 Turning to appellants' equal protection argument, they contend that the Act improperly subjects pharmacists to requirements not imposed on any other professional class, forcing them to sell drugs in which they do not have confidence and to run the risk of suits for defects in those drugs, unlike other professionals. The answer is that because of the specialized nature of prescription drugs, their potential for harm to health, and their susceptibility to price-gouging, they and the people who dispense them have been properly subject to a wide variety of laws and regulations designed to protect the public against abuses that are unique to this profession. "(T)he State has broad police powers in regulating the administration of drugs by the health professions." Whalen v. Roe, supra, 429 U.S. at 603 n.30, 97 S.Ct. at 878. Thus pharmacists and physicians may be subject to reporting rules on prescriptions, see Whalen v. Roe, supra, which do not apply to other professionals because the problems dealt with are limited to a specific segment of the health profession. The mere fact that the Act may affect only pharmacists in a specific manner does not violate the Equal Protection Clause. Nor have the pharmacists put forth any evidence indicating that compliance with the Act would expose them to the risks alleged by them. There is, therefore, insufficient proof to show any likelihood of success on the merits of this claim.
 
 
 17
 Finally, there has been a totally inadequate showing that enforcement of the Act would cause any irreparable injury to any appellants. The doctor remains free to prescribe as he chooses under the Act. Since the drug product received by the patient, as under prior law, depends on what the doctor prescribes and how the prescription is written, the patient is not injured by the Act. The pharmacists are not injured because they must in any event fill prescriptions as they are written by the physicians, dispensing the prescribed brand name drug when substitution is prohibited by the doctor or a lower-priced generic equivalent when permitted by the doctor's prescription. Since the pharmacist is in any event limited to generic substitutes whose bioequivalency is not questioned by the FDA, the druggist's "confidence" in the generic substitute becomes irrelevant. To the extent that a pharmacist cannot sell the brand name drug when substitution is indicated, even though he or she does not have any less expensive generic equivalent,[7] that injury may be cured by stocking at least one lower-priced generic equivalent. The danger that a pharmacist will be subject to suit for dispensing an unsafe generic equivalent remains too speculative, since appellants have failed to adduce any evidence that any generic equivalents not questioned by the FDA are less safe than the brand name products for which they may be substituted. There has therefore been no showing of irreparable injury or of a balance of hardships tipping decidedly in favor of plaintiffs-appellants. See Kampmeier v. Nyquist, supra; Sonesta International Hotels Corp. v. Wellington Associates, supra.
 
 
 18
 Since appellants have failed to establish irreparable injury, probable success on the merits, or even sufficiently serious questions going to the merits to make them a fair ground for litigation, the judgment below denying preliminary injunctive relief is affirmed.
 
 
 
 [1]
 In the case of oral prescriptions, the physician "must expressly state (to the pharmacist) that substitution shall be permitted." N.Y. Education Law (McKinney) § 6816-a(1)(a)
 
 
 [2]
 21 U.S.C. §§ 301, Et seq
 
 
 [3]
 Appellants assert that in such a case the pharmacist may not dispense the more expensive brand name drug. Both the New York State Health Department and the New York State Board of Pharmacy agree with that interpretation of the Act, although the Board of Pharmacy initially had thought that the pharmacist in such a situation could dispense the brand name drug listed on the prescription form. See Pharmaceutical Society of the State of New York, Inc. v. Lefkowitz, 454 F.Supp. 1175 (S.D.N.Y.1978) at n.7. However, a state court construction of the Act on this particular ambiguity cannot modify the constitutional issues, which are addressed to the effect of the Act in the more general situation where both brand name and generic drugs are available; even the appellees admit that if the generic substitute is available and the appropriate signature line is signed, the druggist must make the substitution. See Brief for Appellees at 3
 
 
 [4]
 Theoretically, of course, the vendor of a generic equivalent could claim a burden based on the doctor's preclusion of the equivalent from sale
 
 
 [5]
 Appellants allege there is a conflict between the Act and the federal patent laws since a pharmacist may be forced to sell a generic drug substitute which violates a valid patent on a brand name drug. Such a result is not mandated by the language of the Act. No druggist is required to stock an infringing generic substitute for sale. The fear of the pharmacists is altogether too speculative to pose a violation of the Supremacy Clause
 
 
 [6]
 Similarly, the additional labeling requirement of the New York Act serves a different purpose from the federal regulations to identify the manufacturer of the generic drug substitute for the consumer and appellants have not demonstrated any undue burden from this requirement. Federal preemption of the labeling portion of the Act, N.Y. Education Law (McKinney) § 6816-a(1)(c), has not been proven. Compare, Cosmetic, Toiletry and Fragrance Association, Inc. v. Minnesota, 440 F.Supp. 1216 (D.Minn.1977)
 
 
 [7]
 See note 3, Supra