**KANSAS HEALTH CARE ASSOCIATION, INC., on Behalf of Their Members and All Other Similarly Situated Nursing Facility Providers Certified by the State of Kansas to Participate in the Kansas Medicaid Program; Kansas Association of Homes for the Aging, Inc., on Behalf of Their Members and All Other Similarly Situated Nursing Facility Providers Certified by the State of Kansas to Participate in the Kansas Medicaid Program, Plaintiffs–Appellees,**

v.

**KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES; Dr. Robert C. Harder, Acting Secretary of Kansas Department of Social and Rehabilitation Services, Defendants–Appellants.**

**No. 91–3029.**

United States Court of Appeals, Tenth Circuit.

March 12, 1992.

Bruce Roby (Robert F. Bennett and Patrick D. Gaston, of Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, Kan., with him on the briefs), Office of the General Counsel, Dept. of Social and Rehabilitation Services, Topeka, Kan., for defendants-appellants.

Jeffrey A. Chanay (William E. Enright, Scott, Quinlan & Hecht, with him on the briefs), Entz & Chanay, Topeka, Kan., for plaintiffs-appellees.

Before ANDERSON, TACHA and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

Defendants Kansas Department of Social and Rehabilitation Services (SRS) and Dr. Robert C. Harder appeal the district court's order preliminarily enjoining implementation of the Medicaid reimbursement rate freeze established by Kansas' State Plan Amendment TN–90–44, the reimbursement schedule established by State Plan Amendment TN–90–06, and the defendants from reimbursing Medicaid providers at rates not in compliance with federal law. 754 F.Supp. 1502 On appeal, defendants contend that plaintiffs, two health care associations, lack standing to seek the preliminary injunction granted by the district court. In the alternative, defendants contend that the district court abused its discretion in granting the preliminary injunction. We exercise jurisdiction under 28 U.S.C. § 1292(a)(1) and dismiss for lack of standing.

## BACKGROUND

Plaintiffs, Kansas Health Care Association, Inc. (KHCA) and Kansas Association of Homes for the Aging, Inc. (KAHA), are nonprofit organizations, the members of which include a total of 335 nursing facilities located in Kansas.[1] Members of KHCA and KAHA participate in the federally funded Kansas Medicaid program and receive reimbursement for health care services provided to eligible Medicaid recipients.

By statute, Kansas has elected to participate in the Medicaid program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u. See Kan.Stat.Ann. § 39–708c. SRS is the Kansas state agency responsible for administering the Kansas Medicaid plan.

Kansas, through SRS, implements a facility-specific reimbursement system and calculates each health care provider's rate by focusing on its historical costs and also considering where those costs fall in a percentile comparison with costs reported by other providers.[2] SRS increases rates by an incentive factor for facilities that incur low costs relative to the selected percentile reimbursement limitation and also adjusts to compensate for other special items.

On October 1, 1990, pursuant to State Plan Amendment TN–90–44, SRS implemented a Medicaid reimbursement "rate freeze." Prior to the rate freeze, each facility submitted two cost reports during each fiscal year—one in October and one at the end of the facility's fiscal year. SRS adjusted the reimbursement rate for each facility to reflect the most current cost report, corrected for inflation. Under TN–90–44, SRS no longer was to readjust the

---

1. In their appellate brief, plaintiffs note that they, with leave from the district court, have amended their complaint to add an additional party plaintiff, Top Management Services, Inc. Plaintiffs state that Top Management is an individual Medicaid provider. However, this case arises out of an appeal from the district court's Memorandum and Order of December 31, 1990 and Memorandum and Order of January 14, 1991. Because the complaint was amended subsequent to these orders, we base this review on plaintiffs' original complaint.

2. Each facility's costs are actually reported in four separate categories or "cost centers"—health care, room and board, administrative, and property. SRS sets a percentile limitation for reimbursement for each category.

reimbursement rates based on cost reports submitted between October 1, 1990 and September 30, 1991. Instead, SRS was to determine each facility's rate of reimbursement from that facility's last cost report on file before October 1, 1990. SRS was to inflate the rate for each reimbursement period from the time of the last cost report at an estimated inflation rate of 4.8%.

SRS also implemented State Plan Amendment TN-90-06, which provided for payment adjustments for reforms mandated by the Nursing Home Reform Act and the Omnibus Reconciliation Act of 1987, Pub.L. No. 100-203, § 4211(b)(2) (OBRA '87).[3] OBRA '87 requires each participating state to show that its Medicaid reimbursement rates account for the costs providers incur to comply with these reforms.

Title XIX of the Social Security Act, 42 U.S.C. § 1396, authorizes the grant of federal funds to states for the purpose of providing medical assistance to low-income persons who are aged. Because Kansas participates voluntarily in the federal program, it must comply with federal Medicaid laws and regulations. *See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). To qualify for federal assistance, a State must submit to the Secretary of Health and Human Services—and more specifically to the Health Care Financing Administration (HCFA)—"a State plan for medical assistance" that

> provide[s] ... for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable

State and Federal laws, regulations, and quality and safety standards....

42 U.S.C. § 1396a(a)(13)(A).

In *Wilder*, the Supreme Court held that the language of § 1396a(a)(13)(A) creates both a procedural and substantive right enforceable by health care providers under 42 U.S.C. § 1983. *Wilder*, 110 S.Ct. at 2517. Section 1396a(a)(13)(A) grants health care providers an enforceable *procedural* right "that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy." *Id.* According to federal regulations, a state must make these findings at least annually and also each time reimbursement rates change. 42 C.F.R. § 447.253(b). In addition, § 1396a(a)(13)(A) grants providers an enforceable *substantive* right that the rates actually be reasonable and adequate. *Wilder*, 110 S.Ct. at 2517.

Plaintiffs brought this § 1983 action seeking a preliminary injunction of the two State Plan Amendments—TN-90-44 and TN-90-06—that currently constitute Kansas' system of reimbursement for services provided to Medicaid patients. Proceeding as representatives of their members, plaintiffs contend that although SRS made assurances to HCFA, the findings made by SRS following the 1990 State Plan amendments do not support the assurances made to HCFA and do not comply with the findings requirements imposed by federal law. Further, plaintiffs contend that, for a variety of reasons, the reimbursement rates established by SRS are substantively deficient, i.e., that the rates are not adequate and reasonable to meet the costs of efficiently and economically operated facilities.

After deciding that plaintiffs had standing, the district court determined that plaintiffs had a substantial likelihood of succeeding on the merits of their claims that defendants failed to comply with both the procedural and substantive aspects of § 1396a(a)(13)(A). Consequently, the dis-

---

**3.** This legislation required Medicaid providers to make the following reforms in order to qualify for Medicaid reimbursement: 1) combine intermediate care facilities and skilled nursing facilities by bringing the level of care of intermediate care facilities up to that of skilled nurs-

ing facilities; 2) provide 24-hour nursing coverage; 3) employ physicians as designated medical directors for each facility; 4) employ a social worker for each nursing facility with more than 120 beds; and 5) provide standardized assessments of residents.

trict court granted plaintiffs' request for a preliminary injunction and enjoined defendants from implementing State Plan Amendments TN–90–44 and TN–90–06 and from reimbursing Medicaid providers at rates not in compliance with standards set by federal law.

## DISCUSSION

On appeal, defendants contend that the district court erred in deciding that plaintiffs have "associational standing" to bring this suit. We review de novo issues such as standing that are prerequisites to this court's jurisdiction. *See Trustees of the Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mechanical, Inc.*, 909 F.2d 1379, 1382 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991).

The issue of standing imports both constitutional considerations related to the "case or controversy" limitation of Article III and also prudential concerns "that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes." *Warth v. Seldin*, 422 U.S. 490, 498–500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). One of these prudential limitations is "that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499, 95 S.Ct. at 2205. Nevertheless, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Id.* at 511, 95 S.Ct. at 2211. In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court stated a three-part test for associational standing:

[A]n association has standing to bring a suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. at 2441. This test takes into account both the constitutional dimension of standing and also the concern that the association properly represent its members in the particular suit.

As defendants concede, plaintiffs clearly meet the first and second prerequisites for associational standing. In *Wilder*, 110 S.Ct. at 2517, the Supreme Court held that health care providers can utilize 42 U.S.C. § 1983 to enforce both the procedural and substantive requirements of 42 U.S.C. § 1396a(a)(13)(A). Thus, the members of plaintiffs' organizations—individual health care providers—would have standing to sue in their own right to enforce the Medicaid statute. Further, the interests plaintiffs seek to protect by bringing this suit are germane to each association's purpose. The district court took judicial notice of each association's articles of incorporation and found that "both organizations have the purpose of promoting the availability of long-term care for the elderly."

However, defendants contend the district court erred in granting plaintiffs standing because plaintiffs do not satisfy the third prerequisite announced in *Hunt*. The district court focused on the preliminary injunctive relief sought by plaintiffs and concluded that the grant of a preliminary injunction would not require individual participation of the associations' members. The court relied specifically on the Supreme Court's discussion in *Warth* of the fact that an association's "standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth*, 422 U.S. at 515, 95 S.Ct. at 2213. There, the Court distinguished cases in which an association seeks declaratory or injunctive relief from cases in which an association seeks damages. The Court denied standing in *Warth* because the association sought damages, the proof of which would require an individualized showing by each member of the fact and extent of its injury. Based on the reasoning in *Warth*, the district court concluded that "the requisites of associational standing for purposes of injunctive relief are satisfied by the plaintiffs in this action because it can rea-

sonably be supposed that a preliminary injunction will inure to the benefit of the individual health care providers who may be injured by continuation of the current rate freeze."

Although the district court may have correctly determined that individual participation of the providers will not be required with respect to the injunctive relief sought by plaintiffs, that determination alone was insufficient to support a conclusion that plaintiffs meet the third standing prerequisite from *Hunt*. Under the *Hunt* test, an association has standing only if "neither *the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441 (emphasis added). Therefore, we must determine whether resolution of plaintiffs' two claims related to 42 U.S.C. § 1393a(a)(13)(A)—one substantive and the other procedural in nature—will require individualized participation by the members of the two associations. We emphasize that, for purposes of our standing inquiry, we look only at whether individual participation of the associations' members is required. We do not purport to examine the merits of plaintiffs' claims.

Plaintiffs first complain that the reimbursement rates set by defendants are not "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A). Specifically, plaintiffs argue that the state Medicaid program was underfunded and therefore unable to meet increased costs required by OBRA '87; that SRS did not increase reimbursement rates to account for the increase in the federal minimum wage rate that health care providers must pay; that the 4.8% inflation factor applied by SRS to inflate historical cost figures to arrive at current reimbursement rates is inadequate to cover the increase in medical costs to the providers; and that 78% of the facilities that had recently filed cost reports were not being reimbursed for all of their medical costs related to eligible Medicaid patients.

Under some circumstances, a court may be able to make a cursory review of a state's Medicaid reimbursement system and determine that reimbursement rates are not adequate and reasonable to meet the costs of an efficiently and economically operated facility. For example, in *AMI-SUB (PSL), Inc. v. Colorado Dep't of Social Servs.*, 879 F.2d 789 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990), the district court found that some Colorado hospitals were efficiently and economically operated and that "all hospitals [were] reimbursed only about half of their reasonable costs," *id.* at 799. This court was able to conclude—with minimal participation from individual providers—that Colorado's reimbursement system was inadequate to meet the costs of efficiently operated hospitals. In *AMI-SUB*, Colorado had determined its reimbursement rate for hospitals by looking to the costs reported by each hospital peer group, ordering those costs in a percentile relationship, and then identifying a point on the percentile scale at which the hospitals were efficiently and economically operated. However, solely because of budgetary concerns, Colorado then reimbursed the hospitals at fifty-four percent of the cost level it previously had determined was adequate for efficiently operated hospitals. Therefore, from this information alone, it was clear that Colorado was not "meeting the costs" of those facilities that it determined were efficiently operated. Even in that extreme case, our conclusion was premised on the district court's finding—a finding that required participation of individual hospitals—that some Colorado hospitals were efficiently and economically operated. *Id.*

Although plaintiffs' claims in this case may have merit, the evidence in the appellate record does not lend itself to a summary conclusion, such as that made in *AMISUB*, that the reimbursement rates established by SRS are not adequate and reasonable on their face. Instead, in order to resolve plaintiffs' claims, we will be required to examine evidence particular to individual providers. For example, to determine whether a 4.8% inflation rate insuf-

ficiently accounts for increased costs incurred by providers, we simply will be forced to review evidence that pertains to individual providers. Likewise, each of plaintiffs' contentions supporting the inadequacy of reimbursement rates must be accompanied by proof at trial showing a detrimental effect on efficiently operated providers. In addition, plaintiffs have not yet shown, nor has the district court found, that at least some members of the plaintiff organizations are efficiently and economically operated. Therefore, we conclude that proof of plaintiffs' claim that rates are not adequate and reasonable will necessarily require individual participation of the associations' members.

We next turn to plaintiffs' claim that SRS failed to make the findings required by federal law. In *AMISUB*, we stated that at a minimum a state Medicaid agency must undertake the following procedures in order to make the "findings" required by federal law: "identify and determine (1) efficiently and economically operated hospitals; (2) the costs that must be incurred by *such* hospitals; and (3) payment rates which are reasonable and adequate to meet the reasonable costs of the state's efficiently and economically operated hospitals." *AMISUB*, 879 F.2d at 796 (emphasis added). These procedural requirements clearly demand that the state agency, SRS in this case, undertake a detailed evaluation of individual health care providers. This fact alone indicates that the district court's review of these procedural findings likely will force the court to scrutinize specific health care providers—providers that are not parties to the action. Had the state made absolutely no findings or findings that were clearly inadequate, we could conclude—without individual participation by health care providers—that SRS failed to comply with federal law. *See AMISUB*, 879 F.2d at 796–97 ("Appellee's evidence at trial is flagrantly devoid of any effort to make the federally required findings.").

However, we cannot conclude that the record in this case is devoid of any findings whatsoever or that the findings are deficient on their face. The findings presented as evidence by defendants and the explanations given by SRS representatives at the preliminary injunction hearing demonstrate that SRS drew inferences from the providers' historical cost reports—based on where each provider's categorical costs fall in a percentile comparison with costs of other providers—to decide which of the providers operate economically and efficiently. To determine at trial whether these inferences constitute an appropriate method to "find" which facilities are efficiently and economically operated and to identify the costs incurred by *such* facilities, the district court necessarily would have to inquire into the nature of operations of individual providers. The district court simply could not review these inferences adequately by looking solely at data processed and produced by the state.

Our holding in this case in no way reflects the adequacy of SRS' findings. Instead, it lends integrity to the principle—or prudential concern—related to standing that a complainant, in this case a representative, be the "proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth*, 422 U.S. at 518, 95 S.Ct. at 2215.

Because proof and resolution of the claims asserted by KHCA and KAHA will unavoidably require individual participation of their members, we hold that the two associations lack standing to sue as representatives of their members. Accordingly, we REVERSE the district court's holding that plaintiffs have standing to sue in this case, and we VACATE the preliminary injunction issued by the district court.