EBEL, Circuit Judge,
dissenting from Section I.A., and dissenting in part and concurring in Section II on standing:
I dissent from Section I.A. of this opinion and would find justiciability under 43 C.F.R. § 1784.6-l(e).
As to Section II on standing, I join the opinion of the court, except that I believe there is an additional basis for standing for Houdek and for the institutional plaintiffs Colorado Environmental Coalition and Colorado Mountain Club based on their user interest in the affected property.
1. The Individual Plaintiffs’ Standing
The individual plaintiffs are Sarah Peters and Joshua Houdek. Peters and Houdek were both nominated to and applied for positions on the Colorado RACs. Mr. Houdek is the Outdoor Program Coordinator at Mesa State College in Grand Junction, Colorado. The record contains no information about Ms. Peters’s background. The complaint states that they both submitted their applications by the due date, and each application was accompanied by a letter of recommendation from the interests each would represent. Neither was appointed to a RAC.
a. Injury in Fact
Peters and Houdek allege that they have been injured by the failure of the Secretary to adhere to the appointment procedures established by FACA and the BLM regulations promulgated thereunder. The Supreme Court has recognized that plaintiffs may suffer an injury in fact when an agency fails to follow specific procedural requirements. Defenders of Wildlife, 504 U.S. at 572-73 & nn.7-8, 112 S.Ct. 2130; see also Babbitt, 137 F.3d at 1215-16. Plaintiffs can establish that they have suffered an injury in fact based on alleged procedural irregularity when they “seek[ ] to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs.... ” See Defenders of Wildlife, 504 U.S. at 572, 112 S.Ct. 2130. To challenge an agency’s procedural failing, a plaintiff must show that he or she has a concrete interest, that the procedures at issue were designed to protect that interest, and that the procedural irregularity threatens the plaintiffs concrete interest. Defenders of Wildlife, 504 U.S., at 573 n. 8, 112 S.Ct. 2130; Babbitt, 137 F.3d at 1215-16. I conclude that one of the individual plaintiffs, Houdek, has met this standard.
I find that Houdek has a concrete interest. In environmental cases in which plaintiffs seek standing for alleged procedural failures by an agency, courts find that plaintiffs establish “concrete interests” by showing a “geographical nexus” to, or actual use of, the land potentially affected by the agency action (or inaction). See, e.g., Committee to Save the Rio Hondo, 102 F.3d at 449 (holding that “[t]o demonstrate that the increased risk of harm injures the plaintiffs concrete interests, the litigant must establish either its ‘geographical nexus’ to, or actual use of the site” such that it may suffer environmental consequences from the agency’s action); *1238 Public Citizen v. Dep’t of Transp., 316 F.3d 1002, 1015 (9th Cir.2003) (holding that to show a concrete interest, “environmental petitioners must allege that they will suffer harm by virtue of their geographic proximity to the situs of the claimed pollution”); Sabine River Auth. v. United States Dep’t of Interior, 951 F.2d 669, 674 (5th Cir.1992) (holding that procedural injury must be alleged by a plaintiff “ ‘having sufficient geographical nexus to the site of the challenged project [such that they can] expect [ ] to suffer whatever environmental consequences the project may have’ ”) (alterations in original) (quoting City of Davis v. Coleman, 521 F.2d 661, 671 (9th Cir.1975)). Houdek is a user of lands in Colorado managed by the BLM both in his professional and personal capacity. His application for a position on one of the RACs indicates that he participates in “rock climbing, hiking, mountain biking, kayaking, rafting, and backcountry skiing” in, and manages a college outdoor recreation program that uses public lands overseen by the RAC for the Northwest region of Colorado. Therefore, Houdek has a concrete interest in the regulations promulgated by the BLM for the management of federal lands in Colorado.
By contrast, there is no evidence in the complaint or the record which establishes that Peters has a concrete interest that can be affected by BLM land use decisions. She has provided no information linking her to BLM lands over which the Colorado RACs have authority for making recommendations. Because I cannot conclude that Peters has a geographical nexus to or actually uses lands managed by the BLM in Colorado, she has failed to carry her burden of establishing a concrete interest threatened by the defendants’ alleged procedural failings under this theory of standing.
I also find that the procedures that Hou-dek alleges the defendants failed to follow “are designed to protect [his] threatened concrete interest....” Defenders of Wildlife, 504 U.S. at 573 n. 8, 112 S.Ct. 2130. The purpose of §§ 1784.2-1(a) and 1784.6-1(d) (requiring balanced and broad representation in RAC membership of three specified groups with interests in federal lands), is to protect the interests of recognized users of federal lands by ensuring that their interests are considered in BLM decision making. See National Anti-Hunger Coalition v. Executive Comm. of the President’s Private Sector Survey on Cost Control, 711 F.2d 1071, 1074 n. 2 (D.C.Cir.1983) (“[T]he legislative history makes clear ... [that] the ‘fairly balanced’ requirement [of § 5(b)(2) of FACA] was designed to ensure that persons or groups directly affected by the work of a particular advisory committee would have some representation on the committee.”). By requiring that the RACs include balanced representation of three recognized categories of users of federal lands, these regulations create a mechanism by which the BLM is informed about how the consequences of its land use decisions will affect those users.
Finally, I conclude that the defendants’ failure to abide by the fair balance requirement creates the kind of threat to Hou-dek’s concrete interest that constitutes an injury in fact for the purposes of standing. The crux of Houdek’s argument is that there is an increased risk that his uses of federal lands will be injured because the BLM will be making decisions about how those lands are managed without receiving broad-based advice about the consequences those decisions will have on users like Houdek. He claims that the advice provided by the improperly appointed RACs “is skewed in favor of political or business interests or against recreational interests.”
*1239 Increased risk of environmental harm to the lands he uses can constitute an injury in fact sufficient to support standing. Other courts, including our own, have reached this conclusion in the closely analogous context in which plaintiffs allege an injury in fact because an agency failed to prepare an environmental impact statement required by the National Environmental Policy Act. For example, in Rio Hondo we said:
An agency’s failure to follow the National Environmental Policy Act’s prescribed procedures creates a risk that serious environmental consequences of the agency action will not be brought to the agency decisionmaker’s attention. The injury of an increased risk of harm due to an agency’s uninformed decision is precisely the type of injury [NEPA] was designed to prevent. Thus, under [NEPA], an injury of alleged increased environmental risks due to an agency’s uninformed decisionmaking may be the foundation for injury in fact under Article III.
102 F.3d at 448-49; see also Sabine River Auth, 951 F.2d at 674 (“The procedural injury implicit in agency failure to prepare an [environmental impact statement] — the creation of a risk that serious environmental impacts will be overlooked — is itself a sufficient ‘injury in fact’ to support standing ....”) (quoting Coleman, 521 F.2d at 671).
Because the purpose of the procedural requirements imposed by the BLM regulations is to ensure that the interests of specific groups of federal land users are presented to the BLM by the RACs, alleged increased risks of environmental injury due to the defendants’ failure properly to appoint representative members to the RACs can constitute an injury in fact. See Cargill, 173 F.3d at 329-30 (finding injury in fact where violation of FACA would increase the likelihood that an advisory committee’s research would be inaccurate and the study would be used to justify regulation of plaintiffs’ industry); Nat’l Anti-Hunger Coalition, 711 F.2d at 1074 n. 2 (dictum) (“When [FACA’s fair balance] requirement is ignored, therefore, persons having a direct interest in the [advisory] committee’s purpose suffer injury-in-fact sufficient to confer standing to sue.”).
b. Causal Connection
“To establish causation, a plaintiff must show its injuries are fairly traceable to the conduct complained of.” Committee to Save the Rio Hondo, 102 F.3d at 451 (citing Defenders of Wildlife, 504 U.S. at 560-61, 112 S.Ct. 2130). Causation is clearly made out in this case. Houdek’s injury results not from any specific decision of the agency regarding Colorado federal lands, but from the agency’s uninformed decision making. It is irrelevant that BLM decisions affecting Colorado public lands relying upon advice from the improperly constituted RACs in fact might not impair Houdek’s use of those lands. Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355 n. 14 (9th Cir.1994) (“There is no requirement that a plaintiff prove that an injury to his or her concrete interest will occur.”) (emphasis in original). The injury is the risk that potential environmental damage will be overlooked by the BLM. Cf. Committee to Save the Rio Hondo, 102 F.3d at 452 (“Under the National Environmental Policy Act, an injury results not from the agency’s decision, but from the agency’s uninformed decisionmaking.”) (emphasis in original); Salmon River Concerned Citizens, 32 F.3d at 1355 (same). The purpose of the appointment procedures is to ensure that the interests of land users like Houdek are represented in BLM decision making. Houdek’s allegation that the RACs are not adequately representative is fairly traceable to the alleged failure by the agency *1240 properly to appoint members to the RAC. Thus, Houdek has sufficiently established causation at this stage of the litigation.
c. Redressability
Ordinarily, when a plaintiff challenges an agency’s failure to follow required procedures, the standard for showing redress-ability is relaxed. The Supreme Court has said that “[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.” Defenders of Wildlife, 504 U.S. at 573 n. 7, 112 S.Ct. 2130; see also Committee to Save the Rio Hondo, 102 F.3d at 452; Babbitt, 137 F.3d at 1216 n. 37. “For example, the plaintiff need not establish with certainty that adherence to the procedures would necessarily change the agency’s ultimate decision.” Babbitt, 137 F.3d at 1216 n. 37. Houdek thus need not show with certainty that had the selection procedures been complied with he would have been appointed to a RAC, or even that different people would have been chosen.
But even without the relaxed standard employed in cases alleging procedural injury, I would find the redressability prong of standing to be satisfied. Houdek’s claim is that he was injured by the failure of the Secretary to follow appropriate procedures in making the appointments. This injury is easily remedied by enjoining the RACs from meeting until improperly appointed nominees have been replaced by nominees whose appointments follow the required procedures. Cf id. at 1216 (“Plaintiffs have requested that Defendants be enjoined from imposing the de facto standard at least until they comply with FLPMA by formally amending the land use plan and providing for notice and comment. Thus, Plaintiffs’ injuries are redressable by a favorable decision.”)
d. APA Standing Requirements
By bringing their claims under the APA, the plaintiffs must carry an additional burden to establish standing. They must identify some “final agency action” that is the source of their injury, and they must demonstrate that their claim falls within the zone of interests protected by the laws forming the basis for their claims. Catron County, 75 F.3d at 1434. The agency action complained of here is the appointment by the Secretary of the challenged members of the Colorado RACs. This constitutes final agency action under the APA. See 5 U.S.C. § 551(13) (defining “agency action” to be “the whole or part of an agency ... order -”); id. at § 551(6) (defining “order” to be “the whole or part of a final disposition .... of an agency in a matter other than rule making but including licensing”). In addition, as the discussion above concerning injury in fact indicates, Houdek’s procedural injury falls directly within the zone of interests protected by the FACA and the BLM regulations. The FACA and BLM regulations are designed to ensure that advisory committees like the RACs are independent, representative, and accountable. The plaintiffs’ claim is that by failing to follow the stated procedures, the defendants’ actions directly subvert the precise interests the FACA and the regulations seek to protect. I conclude, therefore, that the plaintiffs satisfy the APA standing requirement, at least at this pleading stage.
2. The Organizational Plaintiffs
Having found that one of the individual plaintiffs has standing, I turn to whether the organizational plaintiffs — the Colorado Environmental Coalition and the Colorado Mountain Club — have standing.
Although “[a] plaintiff generally must assert his own legal rights and interests, *1241 and cannot rest his claim to relief on the legal rights or interests of third parties,” Worth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), it is well established that associations may have standing to sue on behalf of their members if a three-part test is met: (1) the association’s members would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to the association’s purpose; and (3) neither the claim asserted nor the relief requested requires that individual members of the association participate in the lawsuit. Hunt v. Washington State Apple Adver. Comm’n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Kansas Health Care Ass’n v. Kansas Dep’t of Soc. & Rehab. Servs., 958 F.2d 1018, 1021 (10th Cir.1992).
The Colorado Environmental Coalition and the Colorado Mountain Club, the organizational plaintiffs in this case, satisfy the test for standing by an association. First, the members of .each organization would have standing to sue individually. Like individual plaintiff Houdek, members of the CEC and CMC use BLM lands that are influenced by RAC proposals for outdoor recreation of all kinds, in addition to scientific and commercial uses. Thus, the members of the CEC and CMC share the same risk to their interests in the BLM lands that Houdek does: that by failing to follow required procedures in appointing RAC members, the BLM may make uninformed land use decisions that impair the use of public lands by members of the CEC and CMC. Moreover, the same analysis with regard to causation, redressability, and the APA standing requirements that individual plaintiff Houdek satisfies are satisfied by the individual members of the CEC and CMC because they stand in the same relation as Houdek to the BLM.
Second, seeking to enforce the procedural requirements for appointments to the RACs is germane to the purpose of the CEC and CMC. The purpose of those organizations is to preserve, protect, and appropriately manage the use of Colorado wilderness areas, including those lands managed by the BLM. Obviously, the formulation of appropriate BLM policy for those lands is germane to their purpose. These organizations have a direct and self-evident interest in the representativeness of the RACs and the land use policies formulated by the BLM.
Third, the declaratory and injunctive relief that would remedy the CEC’s and CMC’s claims in this case would not require the participation of individual members. Such relief would be directed toward the agency and require it to reappoint the RAC members after correctly following the requirements of the FACA and BLM regulations.
In discussing the standing of the CEC and CMC, the plaintiffs and the defendants address the constitutionally required elements of standing for individual plaintiffs: whether there is an injury in fact, causation, and redressability. This analysis is, however, unnecessary. The test for associational standing incorporates these three elements into the first part of its test — whether an individual member of the organization would have standing to sue. As we have said, the test for associational standing “takes into account both the constitutional dimension of standing and also the concern that the association properly represent its members in the particular suit.” Kansas Health Care Ass’n, 958 F.2d at 1021. If the association satisfies the three-part test for associational standing, the inquiry is complete and the group has standing. See, e.g., Roe #2 v. Ogden, 253 F.3d 1225, 1230 (10th Cir.2001) (concluding that association has standing once the three-part test is met); NCAA v. Cali- *1242 fano, 622 F.2d 1382, 1387 (10th Cir.1980) (same).